STATE of South Dakota, Plaintiff
and Appellee,

v.

LaJean KOEPSELL, Defendant
and Appellant.

No. 17948.

Supreme Court of South Dakota.

Considered on Briefs April 20, 1993.

Decided Nov. 17, 1993.

Rehearing Denied Dec. 23, 1993.

Steve Miller, Sioux Falls, Dennis C. McFarland of McFarland and Nicholson, Sioux Falls, for defendant and appellant.

WUEST, Justice.

Defendant LaJean Koepsell (Koepsell) appeals her conviction on one count of sexual contact and two counts of rape of her six-year-old granddaughter and one count of sexual contact with her four-year-old grandson. We affirm.

## FACTS

Koepsell is the forty-nine-year-old natural mother of V.N. and grandmother to V.N.'s children, daughter L.N. and son Z.N. In January, 1991, while giving Z.N. a bath, V.N. noticed his penis was discolored and bruised. When questioned by his mother, the little boy responded that "grandpa" had done it. "Grandpa" is Gary Koepsell, Koepsell's husband of twenty years, stepfather to V.N. and step-grandfather to L.N. and Z.N.

Investigation led to grand jury indictments of both LaJean and Gary Koepsell for sexual contact with L.N. and Z.N. and the rape of L.N. Gary Koepsell pleaded guilty to sexual contact and is not involved in this appeal.

The trial court found the children competent and both testified at trial. L.N. testified that Koepsell had inserted her fingers and her tongue inside L.N.'s vagina more than once. She stated that Koepsell "stood over me with her privates in my mouth." L.N. related how on one occasion Koepsell had rubbed her genitals against L.N.'s. L.N. testified that Koepsell threatened "If you tell, I'll touch you again." Z.N. testified that Koepsell had put her tongue in his mouth, touched his penis with her tongue and fingers, had put his penis in her mouth and had instructed him to touch her genitals with his fingers. Both children testified the Koepsells had directed L.N. and Z.N. to touch one another while they watched. The children related how either Grandpa or Grandma would take photographs or videos while the other was touching L.N. or Z.N.

A jury found LaJean Koepsell guilty on two counts of rape [1] and one count of sexual

Mark Barnett, Atty. Gen., Joan Boos Schueller, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

---

1. In 1991, SDCL 22–22–1 defined rape by providing, in part:

Rape is an act of sexual penetration accomplished with any person under any of the fol-

contact[2] with L.N. and one count of sexual contact with Z.N. Koepsell appeals, stating two issues. We will address both issues, adding facts where necessary.

## ANALYSIS

### I. THE EXPERT TESTIMONY ALLOWED BY THE TRIAL COURT DID NOT GO TO THE CREDIBILITY OF THE CHILDREN.

▇▇▇ The State moved to introduce hearsay statements made by L.N. and Z.N. to Becky McGuire (McGuire), the South Dakota Department of Social Services investigator, to child psychologist Dr. Cynthia Pilkington (Pilkington) and to V.N.[3] The trial court determined that sufficient indicia of reliability existed and allowed the hearsay testimony. Expert testimony is allowed in child sex abuse cases to assist the jury in understanding matters that normally would not lie within a layman's knowledge. *State v. Svihl,* 490 N.W.2d 269, 273 (S.D.1992); *State v. Bachman,* 446 N.W.2d 271, 275 (S.D.1989). The trial court has broad discretion concerning the qualifications of an expert and admission of expert testimony; it will not be reversed on appeal without a clear showing that it abused its discretion. *State v. Floody,* 481 N.W.2d 242, 249 (S.D.1992); *Bachman,* 446 N.W.2d at 274.

The fundamental test for the admission of expert testimony is whether it will assist the jury in resolving the factual issues before it. . . .

'Incest is prohibited in almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse.'

*Svihl,* 490 N.W.2d at 273.

Koepsell claims both McGuire's and Pilkington's testimony indirectly bolstered the credibility of the testimony of L.N. and Z.N. Neither McGuire nor Pilkington expressed a direct opinion as to whether the children were telling the truth.

McGuire stated that had the children disclosed all the details in the first interview, it might have indicated the children were coached. Her opinion was that neither L.N. nor Z.N. appeared to have been coached. McGuire testified that L.N. paused a long time before answering a question concerning sexual abuse and that such a trait was common for victims of child sexual abuse.

lowing circumstancès:

    ❋    ❋    ❋    ❋    ❋    ❋

(4) Where the victim is less than ten years of age[.]
In 1991, SDCL 22-22-2, provided in part:
Sexual penetration means an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital and anal openings of another person's body. All of the foregoing acts of sexual penetration, except sexual intercourse, are also defined as sodomy.
Dr. Jennifer Olson testified only scarred remnants of L.N.'s hymen remained thus indicating vaginal penetration had taken place.

2. SDCL 22-22-7 provides:
Any person, sixteen years of age or older, who knowingly engages in sexual contact with another person, other than his spouse if such other person is under the age of sixteen years is guilty of a Class 3 felony. If the actor is less than three years older than the other person, he is guilty of a Class 1 misdemeanor.

3. Hearsay statements are allowed under the "tender years" exception of SDCL 19-16-38 which provides:

A statement made by a child under the age of ten describing any act of sexual contact or rape performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or in any proceeding under chapter 26-8 in the courts of this state if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
  (a) Testifies at the proceedings; or
  (b) Is unavailable as a witness.
    However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
    No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

McGuire went on to testify that gradual disclosure of details was consistent with traits exhibited by victims of child sexual abuse and that L.N. and Z.N. had gradually disclosed the details of their abuse.

Pilkington testified that it would be difficult to program a four or six-year-old child and that she had seen no signs of programming or coaching in either child. In response to questioning concerning what else was discussed at particular session with Z.N., Pilkington also stated: "It's typical after there's been disclosure for me to have a discussion about truth and lies, which I did." Pilkington did not give her opinion as to Z.N.'s veracity nor did State pursue Pilkington's response.[4] Pilkington testified that it would concern her if a child's description of abuse was the same story, given over and over without deviation. She then stated L.N. and Z.N. had yielded their information in bits and pieces.

■ This court has repeatedly expressed concern as to the trial of "cases of this nature by experts" and found the admission of "expert testimony has to be resolved on a case-by-case basis." Svihl, 490 N.W.2d at 273–74; see also Floody, 481 N.W.2d at 257 (Henderson, J., concurring in result). However, where a jury of twelve ordinary South Dakota citizens has little or no knowledge concerning incest and sexual abuse of children, expert testimony is necessary to provide a foundation for the jury to assess the evidence.

This court has previously discussed to what extent an expert may testify concerning the traits of abused children:

> [O]ne witness may not testify as to another witnesses' credibility or truth-telling capacity because such testimony would invade the province of the jury to determine the credibility of a witness. . . . Yet, . . . '[a]n expert may testify as to certain characteristics of abused children and may even compare those characteristics to actions of a particular victim.'

Floody, 481 N.W.2d at 249 (quoting McCafferty v. Solem, 449 N.W.2d 590, 592 (S.D.

1989) (citing United States v. St. Pierre, 812 F.2d 417, 419–20 (8th Cir.1987))).

Koepsell objected to McGuire's testimony as to whether it was "uncommon" for children who had been sexually abused to take a "long pause" before answering a question. Koepsell claims McGuire's comparison of L.N.'s traits with the general characteristics displayed by abused children impermissibly bolstered the credibility of the child's testimony. Similarly, Koepsell's objections to the testimony of Pilkington pertained to foundation questions concerning the general memory and disclosure patterns of abused children and questions as to whether L.N. displayed the characteristics of a sexually abused child. The expert testimony comparing specific and general characteristics of sexually abused children goes no further than testimony we have determined was properly admitted in previous cases. Svihl, 490 N.W.2d at 272; State v. Buller, 484 N.W.2d 883, 889 (S.D. 1992), cert. denied, —— U.S. ——, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992); Floody, 481 N.W.2d at 249; State v. Spaans, 455 N.W.2d 596, 599 (S.D.1990). In fact, this is exactly the kind of comparison testimony that is helpful to a jury with no knowledge of child sex abuse and its indications.

Further, in opening statement Koepsell told the jury testimony would show inconsistencies, improper interviewing techniques and evidence the children were lead and interrogated for weeks until they gave increasingly incriminating information each time. Where the defense claimed the children had been programmed, the "defense tactic, therefore, made it advisable to apprise the jury of the traits and characteristics that can be evidence by a minor who had been sexually abused." Svihl, 490 N.W.2d at 273.

The trial court did not abuse its discretion in admitting the testimony.

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN LIMITING KOEPSELL'S CROSS-EXAMINATION OF V.N.

■ Koepsell's right to confront witnesses against her is guaranteed by the Sixth

---

4. This response indicates only that the children were aware of the difference between the truth and lies. In determining their competency to testify, the court itself established that the children were able to differentiate the truth from a lie.

Amendment to the United States Constitution and by article VI, § 7 of the South Dakota Constitution. "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *State v. Bogenreif*, 465 N.W.2d 777, 782 (S.D.1991). Nonetheless, the trial court retains broad discretion concerning the limitation of cross-examination and it will be reversed only when there is a clear abuse of that discretion and a showing of prejudice to the defendant. *United States v. Crump*, 934 F.2d 947, 951 (8th Cir.1991); *Bogenreif*, 465 N.W.2d at 783; *State v. Honomichl*, 410 N.W.2d 544, 548 (S.D.1987). The burden is on the defendant to show a reasonable jury probably would have a significantly different impression if otherwise appropriate cross-examination had been permitted. *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1436, 89 L.Ed.2d at 684; *Bogenreif*, 465 N.W.2d at 782.

■ Koepsell claims the court abused its discretion by limiting cross-examination of V.N. in three areas: 1) harassing phone calls made to Koepsell; 2) whether V.N. chose to believe her children instead of her mother; and 3) whether V.N. was considering suing the Koepsells for the sexual abuse of L.N. and Z.N.

Koepsell testified that she had received harassing late night phone calls which the sheriff traced to the home of V.N. and her husband. On cross-examination, V.N. stated she did not remember any late night phone call to her mother. Koepsell was restricted from pursuing V.N. any further as to the phone calls. The trial court may limit cross-examination when a question has already been asked and answered or to prevent counsel from harassing or arguing with a witness. *See* SDCL 19–14–18. The limitation on cross-examination of V.N. as to the late-night phone calls was within the discretion of the trial court.

■ The trial court did not abuse its discretion in limiting the attempt to cross-examine V.N. as to whether she believed her children rather than her mother.

■ The trial court's limitation of Koepsell's cross-examination of V.N. concerning the possibility of a civil suit against the Koepsells by L.N. and Z.N. was error. However, Confrontation Clause errors are subject to harmless error analysis. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686; *Crump*, 934 F.2d at 951; *Bogenreif*, 465 N.W.2d at 782–83. The United States Supreme Court has articulated the analysis used to determine whether the error was harmless:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–87 (citing *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)).

■ V.N.'s testimony was *not* crucial to the prosecution's case; the testimony of L.N. and Z.N. themselves was far more significant. Most of V.N.'s testimony was cumulative; both children testified, along with McGuire, Pilkington and others. V.N.'s testimony concerning sexual abuse was extensively corroborated by all the prosecution witnesses and, to' some extent, by Koepsell herself; there was minimal contradiction. V.N. was extensively cross-examined by Koepsell in areas not limited by the court. There was overwhelming evidence against Koepsell even without V.N.'s testimony. Finally, the possibility of a civil suit against Koepsell as a motive for V.N.'s testimony was only tangentially related to the real issue of this case—did Koepsell sexually abuse

L.N. and Z.N. Even if the damaging potential of Koepsell's cross-examination concerning a civil suit were fully realized, the error was harmless beyond a reasonable doubt.

We affirm.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

It is critical to note that these children did not initially implicate the grandmother, LaJean Koepsell. Rather, LaJean Koepsell's husband was pointed out as the individual who sexually abused these children.

After interviews with the children's mother and medical personnel and counselors, the stories of the children were rearranged or changed to implicate LaJean Koepsell. There was no question during the trial that the children had been sexually abused. Who abused the children and when—that was the real jury question.

In reading the cases in South Dakota,* it becomes obvious that this Court has adopted the rule that experts can testify that children reveal the characteristics of abused children. However, it is equally true that this Court has held that the experts cannot testify to the credibility or veracity of a child's complaints. Said another way, there can be general expert testimony which would be admissible to assist the jury in identifying sexually abused children; however, this cannot spill over with testimony which bolsters a child's credibility. If the latter takes place, the province of the jury as the factfinder is eliminated. Behavioral science experts simply are not permitted to take over the role of a jury trial. As the Ninth Circuit held in *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir.1973) *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974):

> Credibility ... is for the jury—the jury is the lie detector in the courtroom ... It is now suggested that psychiatrists and psychologists have more [expertise in weighing the veracity of a witness] than either judges or juries, and that their opinions can be of value [in determining credibility]. Perhaps. The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral but still an important matter.

We have oft-over held that "the credibility of witnesses and the weighing of the evidence is for the jury." *State v. Myers*, 88 S.D. 378, 381, 220 N.W.2d 535, 537 (1974). Here, the experts specifically testified to the children's capacity for truthfulness thereby violating *State v. Floody, supra*, and *State v. Goodroad*, 455 N.W.2d 591 (S.D.1990).

Defense counsel protected LaJean Koepsell's rights and the record. A discussion was held in chambers before any evidence was adduced. Koepsell's counsel attempted, by motion, to prohibit two experts from expressing opinions on guilt or innocence of his client. Preliminarily, he won the battle, for the trial court granted the motion but, in the end, he lost the battle. DSS investigator Becky McGuire testified that the children "had not been coached." A child psychologist, Cynthia Pilkington, testified as to her "impressions" of conversation with the children. And, inter alia, also testified that "the children were not programmed" or "coached." Prior to the "they were not programmed" and "they were not coached" testimony, both witnesses were able to answer questions, through *observations* of the children and *impressions* as to *why* the children were not "programmed" or "coached." In short, the initial court order was granted and then abandoned as the evidence unfolded; thereby, the experts were testifying as to the credibility of the children. In closing argument, the prosecution strongly emphasized that the experts' testimony (concerning credibility) was "insurmountable evidence to show what the kids said happened, happened." Thereby, the prosecutor violated the decisions of this Court by advocating that the

---

* *State v. Svihl*, 490 N.W.2d 269 (S.D.1992); *State v. Floody*, 481 N.W.2d 242, 248–9 (S.D.1992); *State v. Spaans*, 455 N.W.2d 596, 599 (S.D.1990); *McCafferty v. Solem*, 449 N.W.2d 590, 592–93 (S.D.1989).

experts could properly *vouch* for the children's out-of-court declarations. A jury should be deciding the credibility, not these two experts. It is to be remembered that the children's testimony was hearsay in the first instance; then, if an expert is permitted to testify as to the credibility of the hearsay, the law would countenance untrustworthy and unreliable evidence. ·

LaJean Koepsell did not have a fair trial. On the aforesaid issue, I would reverse the conviction.

Additionally, I would reverse the conviction on Issue II, relative to the advocacy by appellate counsel that LaJean Koepsell's rights were denied when the trial court absolutely refused cross-examination of the children's mother, V.N. My supporting authority is: *State v. Volk*, 331 N.W.2d 67, 71–72 (S.D.1983) and *State v. Brandenburg*, 344 N.W.2d 702, 705 (S.D.1984). These two cases condemn a trial court's ruling to foreclose a defendant from impeaching a witness to establish bias and prejudice. As an example, V.N. made (allegedly) harassing phone calls to LaJean Koepsell. Questions bearing on V.N.'s intentions to sue Koepsell were propounded and the trial court would not permit them. Later, it developed in a motion for new trial, that V.N. had, indeed, sued Koepsell, on behalf of the children, for damages. The file was in McCook County and the trial court took judicial notice of it. This was all legitimate inquiry to get to the truth of the allegations of V.N. against LaJean Koepsell, but was not presented to the jury for it to consider the reasons and motivations of V.N. It was proper impeachment. It's exclusion was not harmless error as the State argues; for, indeed, in *Volk*, 331 N.W.2d at 71, we honored a United States Supreme Court decision in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), which held that impeachment of a key witness births an issue of constitutional dimension.

SABERS, Justice (dissenting).

I join the dissent of Justice Henderson on Issue II because Koepsell should have been permitted to cross-examine V.N., a hostile and adverse witness as to Koepsell, regarding bias, prejudice, and the possibility of a civil lawsuit for damages against her.

I dissent also on Issue I for the additional reason that the experts' opinion testimony that the children were not led or coached is the ultimate issue that they were telling the truth when they claimed, despite inconsistent earlier testimony, that they were abused by Grandma *too*. *McCafferty*, 449 N.W.2d at 592 (one witness may not testify as to another witness' credibility or truth-telling capacity).

Additionally, this case precedes the Supreme Court Rule change on ultimate issue testimony, *see* SDCL 19–15–4 (1993), and therefore, the majority opinion violates the applicable law. *See State v. Burtzlaff*, 493 N.W.2d 1, 10 (S.D.1992) (Wuest, J., concurring in part and dissenting in part) ("The 'ultimate issue rule' prevents a witness from expressing an opinion on one of the ultimate issues to be decided by the trier of fact. South Dakota retains the ultimate issue rule (as the 'Ultimate Fact Doctrine') and does not permit an expert witness to express an opinion upon the ultimate issue, holding it usurps the province of the jury." (Citations omitted.)) It is simply too early to apply the new rule to this case.