#25047-a-JKM

**2009 SD 106**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

VINCENT CHAD FASTHORSE,             Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN A. SEVERSON
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANDREW KNECHT
Assistant Attorney General                Attorneys for plaintiff
Pierre, South Dakota                      and appellee.

TRACI SMITH
Office of Minnehaha County
 Public Defender                         Attorneys for defendant
Sioux Falls, South Dakota             and appellant.

\* \* \* \*

ARGUED ON OCTOBER 6, 2009

OPINION FILED **12/09/09**

#25047

MEIERHENRY, Justice

[¶1.]        A jury found Vincent Fasthorse guilty of kidnapping, aggravated assault, and rape.  Fasthorse appeals.  We affirm.

## FACTS AND BACKGROUND

[¶2.]        On September 14, 2007, Fasthorse attended a house party at his uncle's residence.  A.S. was also at that party.  As the party was ending, A.S. and Fasthorse agreed he would give her a ride to her boyfriend's house.  Fasthorse, however, drove A.S. past her boyfriend's house and continued to a country road where he turned onto a trail that led into a cornfield.

[¶3.]        After parking the car, Fasthorse attempted to kiss A.S.  She recoiled from his advance and got out of the vehicle.  She tried to escape by running back to the country road.  Fasthorse ran after her and was able to catch her by tripping her.  Fasthorse forced A.S. to return to the vehicle and into the back seat.  He then raped her twice.  After the second rape, A.S. fled and ran toward the country road where she was picked up by a Good Samaritan who gave her a ride home.  A.S. subsequently went to the hospital emergency room where she was examined by a physician.  The physician, as part of the examination, performed a rape kit.  A.S. suffered injuries in addition to those directly associated with the rape.  The police were contacted, and an officer interviewed her about what had taken place.  At all times A.S. maintained that Fasthorse was the person responsible for the rape and injuries she sustained.

[¶4.]        At trial, Fasthorse claimed A.S.'s rendition of the facts was not supported by forensic evidence.  A.S. told the medical personnel attending to her

injuries that she had not had sex with any other person in the 72 hours preceding the rape. Fasthorse argued DNA evidence contradicted A.S.'s testimony, in that, the sperm cell fraction from her underwear revealed DNA from at least three contributors. The test revealed the presence of equal concentrations of DNA from both Fasthorse and A.S.'s boyfriend. Equal DNA concentrations indicated the two sexual encounters likely occurred within 12 to 24 hours of each other. This scientific evidence stood in contrast to A.S.'s statements to medical staff that she had not had sexual intercourse in the 72 hours before the rape. The trial court did not allow Fasthorse to cross-examine A.S. or medical personnel about the discrepancy between A.S.'s claim regarding her lack of sexual activity and DNA evidence. Fasthorse was able, however, to cross-examine the State's DNA expert concerning A.S.'s conflicting testimony.

[¶5.] At the time of trial, A.S. was serving a sentence in the county jail for maintaining a drug house. Fasthorse argued A.S.'s conviction on drug charges was relevant to impeach her credibility concerning prior drug use, bias, or her motive in testifying against Fasthorse. The trial court prohibited Fasthorse from introducing evidence of the conviction on the basis that it was irrelevant or without proper foundation.

## ISSUES

1. Whether there was sufficient evidence to support the jury verdict finding Fasthorse guilty of kidnapping and aggravated assault.

2. Whether the method of selecting potential jurors denied Fasthorse due process rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article VI, Section 7 of the South Dakota Constitution.

3.  Whether limiting Fasthorse's cross-examination of A.S. denied him the right to a fair trial pursuant to Article VI, Sections 2 and 7 of the South Dakota Constitution, and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## ANALYSIS

*Kidnapping and Aggravated Assault Convictions*

[¶6.]     We review the sufficiency of the evidence to sustain Fasthorse's convictions for kidnapping and aggravated assault in the light most favorable to the verdicts. State v. Carter, 2009 SD 65, ¶44, 771 NW2d 329, 342. The question is whether "there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *Id.* (quoting State v. Buchholz, 1999 SD 110, ¶33, 598 NW2d 899, 905). On review, this Court will not resolve conflicts in the evidence, assess the credibility of witnesses, or reweigh the evidence. *Id.* (citing State v. Shaw, 2005 SD 105, ¶19, 705 NW2d 620, 626). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustain[s] a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* (citing *Shaw*, 2005 SD 105, ¶19, 705 NW2d at 626); State v. Guthrie, 2001 SD 61, ¶48, 627 NW2d 401, 421 (examining the totality of the evidence in evaluating a conviction).

[¶7.]     The crime of kidnapping in South Dakota can be accomplished by "confin[ing] another person for a substantial period of time, with . . . the . . . purpose[] . . . [t]o facilitate the commission of any felony[.]" SDCL 22-19-1. This statute in relevant part provides:

> Any person who, either unlawfully removes another person from the other's place of residence or employment, or who unlawfully removes another person a substantial distance from the vicinity

-3-

> where the other was at the commencement of the removal, or who unlawfully confines another person for a substantial period of time, with any of the following purposes: . . . (2) To facilitate the commission of any felony or flight thereafter[.]

*Id.* We have previously determined that the confinement contemplated by SDCL 22-19-1 must be in addition to that used to effectuate the rape and not "merely incidental" to it. State v. Curtis, 298 NW2d 807 (SD 1980); State v. Reiman, 284 NW2d 860 (SD 1979). We have referred to this additional confinement requirement as the *Curtis-Reiman* test. The *Curtis-Reiman* test is "meant to prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape." State v. Reyes, 2005 SD 46, ¶41, 695 NW2d 245, 258. Attendant with this test is the "need for some increased risk of harm" as a result of the kidnapping. *Id.*

[¶8.]        Fasthorse claims he could not have been convicted of kidnapping because the only confinement of A.S. was incidental to the rape. A.S. testified Fasthorse was to drive her to her boyfriend's house. Fasthorse, however, did not stop at the boyfriend's house but instead drove past the house and into the country without taking notice of A.S.'s objections. Fasthorse then secluded her in a cornfield, ran after her when she tried to escape, tripped her, dragged her back to the vehicle, and forced her into the back seat. All these actions went beyond those associated with confinement incidental to the rape. *See Curtis*, 298 NW2d 807; *Reiman*, 284 NW2d 860. Additionally, taking A.S. to a remote location increased the risk of harm to her. *Reyes*, 2005 SD 46, ¶41, 695 NW2d at 258 ("'Most movement of rape victims by their attackers is designed to seclude the victim from possible assistance and to prevent escape – which inevitably increases the risk of

harm to the victim.'" (quoting State v. Running Bird, 2002 SD 86, ¶26, 649 NW2d 609, 614-15)). *See also* State v. Lykken, 484 NW2d 869 (SD 1992) (stating the *Curtis-Reiman* test is "not meant to allow a rapist a free kidnapping because he also commits a rape"). After viewing these facts in the light most favorable to the jury's verdict, we conclude Fasthorse's confinement of A.S. was more than incidental to the rape. Therefore, the jury had a sufficient basis to find Fasthorse guilty of kidnapping and the verdict is affirmed.

[¶9.] Aggravated assault in South Dakota is governed by SDCL 22-18-1.1, which provides in relevant part that "any person who: (1) attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life . . . is guilty of aggravated assault." *Id.* Fasthorse argues on appeal that the evidence presented at trial was insufficient to sustain an aggravated assault conviction. He claims the evidence did not show A.S. had suffered "serious bodily injury" as required by SDCL 22-18-1.1.

[¶10.] Fasthorse argues serious bodily injury "means an injury which is grave and not trivial, and which gives rise to apprehension of danger to life, health, and limb." State v. Bogenreif, 465 NW2d 777, 780 (SD 1991) (quoting State v. Janisch, 290 NW2d 473, 476 (SD 1980)). Furthermore, Fasthorse claims A.S.'s injuries did not constitute serious bodily injury. Fasthorse suggests A.S.'s relatively short three-hour hospital stay, the nurse's description of A.S.'s condition as "good" except for some minor scratches and abrasions, and lack of life-threatening injuries demonstrate that no serious bodily injuries were present. Fasthorse's argument, however, overlooks the definition of aggravated assault which includes "attempts to

cause serious bodily injury . . . under circumstances manifesting extreme indifference to the value of human life."

[¶11.] Trial testimony established that Fasthorse punched, choked, and threatened to shoot and kill A.S. He also tripped her and dragged her back to the vehicle. This evidence was sufficient for the jury to determine that Fasthorse "attempt[ed] to cause serious bodily injury . . . under circumstances manifesting extreme indifference to the value of human life" to A.S. *See Carter*, 2009 SD 65, ¶44, 771 NW2d at 342. The jury's verdict finding Fasthorse guilty of aggravated assault is affirmed.

*Systematic Exclusion of Jurors*

[¶12.] Fasthorse claims the method of selecting jurors at his trial amounted to a systematic violation of his due process rights under the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article VI, Section 7 of the South Dakota Constitution. Fasthorse's claims are similar to those raised and recently addressed in *State v. Wright*. 2009 SD 51, 768 NW2d 512. As in *Wright,* Fasthorse is unable to establish that the jury selection process systematically excluded people on the basis of race. Thus, he has failed to show a violation of his due process rights.

*Cross-Examination of Witnesses*

[¶13.] Fasthorse argues he was denied a fair trial guaranteed by the Sixth Amendment to the United States Constitution and Article VI, Section 7 of the South Dakota Constitution because he was not permitted to confront and cross-examine witnesses testifying against him. Fasthorse cites to *Bogenreif*, wherein we said

"'[e]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" 465 NW2d at 782 (quoting Delaware v. Van Arsdall, 475 US 673, 106 SCt 1431, 89 LEd2d 674 (1986)). Specifically, Fasthorse claims he was denied his constitutional right to cross-examine A.S. about her post-rape arrest stemming from a drug charge and her statements to medical personnel that she had not had sexual relations with anyone in the 72 hours leading up to the rape.

[¶14.] We review evidentiary rulings by trial courts under the abuse of discretion standard. *Carter*, 2009 SD 65, ¶31, 771 NW2d at 338. The trial court's rulings "are presumed correct" on review. *Id.* (quoting State v. Larson, 1998 SD 80, ¶10, 582 NW2d 15, 17). We have stated "a trial court's ruling on limiting cross-examination will be reversed on appeal only when there is a clear abuse of discretion as well as a showing of prejudice to the defendant." *Id.* (citing State v. Koepsell, 508 NW2d 591, 595 (SD 1993)). Prejudice to the defendant "results when 'a reasonable jury probably would have a significantly different impression if otherwise appropriate cross-examination had been permitted.'" *Id.* (citing State v. Johnson, 2007 SD 86, ¶35, 739 NW2d 1, 13 (quoting *Koepsell*, 508 NW2d at 595)). Furthermore, the trial court's decision to exclude certain subjects on cross-examination is subject to the following test:

> The correct inquiry is whether, assuming that the damaging potential of cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence

of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* (citing *Koepsell*, 508 NW2d at 595 (quoting *Van Arsdall*, 475 US at 684, 16 SCt at 1438 (citing Harrington v. California, 395 US 250, 89 SCt 1726, 23 LEd2d 284 (1969))))).

[¶15.]     In this case, the trial court determined that cross-examination of A.S. about her arrest on a drug charge was not relevant to her testimony about the rape. When asked how this information was relevant at trial, Fasthorse's counsel offered that it was relevant to A.S.'s "ability to recall events." The trial court found Fasthorse was trying to attack A.S.'s character in an impermissible manner. We agree with the trial court. The inference Fasthorse was attempting to make about A.S.'s familiarity with drugs and her drug-using lifestyle was not relevant to whether she was raped. Nevertheless the jury was made aware that she had been convicted of a felony. She testified that she was a convicted felon, and the trial court instructed the jury that her conviction could be considered in judging her credibility. Under these circumstances, Fasthorse has failed to show that the trial court abused its discretion.

[¶16.]     The second excluded topic on cross-examination dealt with the discrepancy between the DNA evidence and A.S.'s testimony and statements about not having sexual intercourse with anyone 72 hours prior to the rape. The trial court did not allow Fasthorse to question A.S. about her prior sexual conduct. The trial court originally excluded this evidence based on SDCL 23A-22-15, which

prohibits evidence of a rape victim's prior sexual conduct.  The statute provides in relevant part:

> In prosecutions for a sex offense under chapter 22-22, evidence of specific instances of a victim's prior sexual conduct shall not be admitted nor reference made thereto before the jury or jury panel, except as provided in this section.  Whenever a party proposes to offer evidence concerning a victim's prior sexual conduct, the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of the evidence.

*Id.*  The trial court ruled A.S.'s statements about her recent sexual activity were not relevant and the proper foundation had not been laid for the introduction of such evidence.  At the time of the trial court's ruling, there had been no showing of its relevance because the DNA test results indicating multiple DNA contributors had not been introduced.  At that point in the trial, the relevance and foundation had not been established.  Consequently, Fasthorse has not shown that the trial court abused its discretion.

[¶17.]          Even if the trial court's ruling was in error, Fasthorse cannot demonstrate he was prejudiced by the limited cross-examination.  The results of the DNA tests were eventually presented to the jury, which revealed the presence of DNA from A.S., her boyfriend, Fasthorse, and an unknown contributor.  Counsel for Fasthorse admitted in appellate oral argument she could have asked to re-open A.S.'s cross-examination on this subject once relevance and foundation were established.  Fasthorse chose not to as a matter of trial strategy.  Even so, Fasthorse's theory of the case was fully presented to the jury in closing argument, including the impeaching nature of the DNA evidence.  Fasthorse has not shown "a reasonable jury probably would have [come] to a significantly different impression"

had he been able to cross-examine A.S. on the DNA results or the specifics of her drug conviction. *Johnson*, 2007 SD 86, ¶35, 739 NW2d at 13. Therefore, the trial court is affirmed on this issue.

[¶18.] The trial court is affirmed on all issues.

[¶19.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.

[¶20.] SABERS, Retired Justice, sitting for SEVERSON, Justice, disqualified.