#26577-a-LSW

**2013 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

VINCENT CHAD FAST HORSE,                     Petitioner and Appellant,

    v.

DOUGLAS WEBER, WARDEN
OF THE SOUTH DAKOTA
STATE PENITENTIARY,                     Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSEPH NEILES
Judge

* * * *

CYNTHIA A. HOWARD of
Minnehaha County Office of
 The Public Advocate
Sioux Falls, South Dakota           Attorneys for petitioner
                                     and appellant.

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota               Attorneys for respondent
                                     and appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2013

OPINION FILED **10/16/13**

#26577

WILBUR, Justice

[¶1.]     Vincent Fast Horse appeals the denial of his request for habeas corpus relief. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]     Fast Horse was indicted by a grand jury in September 2007 for the crimes of first-degree kidnapping, second-degree rape, and aggravated assault. The State also filed a part two information, which alleged that Fast Horse had been previously convicted of two felonies. The factual and procedural history of this case is set forth in this Court's opinion in *State v. Fasthorse* (*Fasthorse*), 2009 S.D. 106, 776 N.W.2d 233.[1]

[¶3.]     Traci Smith (trial counsel) was appointed to represent Fast Horse. Fast Horse pleaded not guilty to the charges and the part two information at an arraignment hearing[2] on October 24, 2007. The jury convicted Fast Horse of the three charges.

[¶4.]     On July 28, 2008, the trial court conducted an arraignment hearing in relation to Fast Horse's part two information at which Fast Horse pleaded guilty. Ultimately, the trial court sentenced Fast Horse to 25 years in prison for aggravated assault, 60 years in prison for second-degree rape, and 60 years in

---

1.     We note that in the 2009 direct appeal we incorrectly referred to Fast Horse's last name as "Fasthorse."

2.     The judge (arraigning court) who presided over the October 24, 2007 arraignment was different from the judge (trial court) who presided over the trial and the July 28, 2008 part two information arraignment.

-1-

prison for first-degree kidnapping. These penalties were to run concurrently with each other and consecutively to Fast Horse's 1996 rape conviction.[3]

[¶5.]    Fast Horse appealed his convictions for aggravated assault, kidnapping, and rape to this Court in *Fasthorse*. *See generally id.* This Court affirmed Fast Horse's convictions. *Id.*

[¶6.]    Fast Horse filed a pro se petition for writ of habeas corpus on October 8, 2010. Fast Horse was appointed new counsel. On February 17, 2012, Fast Horse filed an amended application for writ of habeas corpus. The habeas court filed a writ of habeas corpus on the same day. A habeas hearing was held on June 5, 2012. At the hearing, an investigator from the police department, trial counsel, Fast Horse, and one of the two prosecutors, Paul Bengford, testified.

[¶7.]    On August 10, 2012, the habeas court filed a memorandum decision denying Fast Horse's writ of habeas corpus. The habeas court subsequently entered findings of fact and conclusions of law, and an order denying the permanent writ of habeas corpus and judgment on September 10, 2012.

[¶8.]    Fast Horse appeals the denial of his writ of habeas corpus and presents the following issues on appeal:

> 1.    Whether Fast Horse was denied effective assistance of counsel when his trial counsel did not thoroughly investigate his case; incorrectly advised him of the maximum possible penalty; did not obtain a plea bargain offer for him; and did not adequately attack the credibility of the victim.

---

3.    Fast Horse previously sought habeas relief from his 1996 rape conviction. Relief was denied. This Court affirmed the denial of his request for habeas relief. *See Fast Horse v. Weber* (*Fast Horse I*), 1999 S.D. 97, 598 N.W.2d 539.

2. Whether Fast Horse was denied a fair trial when the trial court limited his ability to cross-examine the victim.

3. Whether Fast Horse was denied due process of law when the arraigning court incorrectly advised Fast Horse of the maximum possible penalty.

**STANDARD OF REVIEW**

[¶9.]     "A habeas corpus claim is a collateral attack on a final judgment and therefore our review is limited." *Boyles v. Weber*, 2004 S.D. 31, ¶ 6, 677 N.W.2d 531, 536. "A habeas corpus applicant has the initial burden of proof to establish a colorable claim for relief." *Steiner v. Weber*, 2011 S.D. 40, ¶ 4, 815 N.W.2d 549, 551 (quoting *Jenner v. Dooley*, 1999 S.D. 20, ¶ 11, 590 N.W.2d 463, 468). "Habeas corpus can only be used to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.* (quoting *Jenner*, 1999 S.D. 20, ¶ 11, 590 N.W.2d at 468). A habeas court's findings of fact will be upheld unless such findings are clearly erroneous. *Boyles*, 2004 S.D. 31, ¶ 6, 677 N.W.2d at 536.

[¶10.]     Additionally, we have previously delineated the standard of review for claims of ineffective assistance of counsel:

> Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This Court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

*Id.* ¶ 7, 677 N.W.2d at 536 (quoting *Hays v. Weber,* 2002 S.D. 59, ¶ 12, 645 N.W.2d 591, 596).

### DECISION

[¶11.]    In this appeal, Fast Horse alleges four instances of ineffective assistance of counsel that he claims affected the outcome of his trial.  In addition, Fast Horse alleges two due process violations.  First, Fast Horse alleges that he was denied a fair trial when the trial court limited his ability to cross-examine the victim.  Second, he alleges that he was denied due process when the arraigning court incorrectly advised him of the maximum possible penalty.

[¶12.]    **1.    Whether Fast Horse was denied effective assistance of counsel when his trial counsel did not thoroughly investigate his case; incorrectly advised him of the maximum possible penalty; did not obtain a plea bargain offer for him; and did not adequately attack the credibility of the victim.**

[¶13.]    Fast Horse alleges four instances of ineffective assistance of counsel. Specifically, he contends that his trial counsel failed to thoroughly investigate his case; incorrectly advised him of the maximum possible penalty; did not obtain a plea bargain offer for him; and did not adequately attack the credibility of the victim.

[¶14.]    "To prevail 'on a claim of ineffective assistance of counsel, a defendant must show that his counsel provided ineffective assistance and that he was prejudiced as a result.'" *State v. Hannemann,* 2012 S.D. 79, ¶ 11, 823 N.W.2d 357, 360 (quoting *State v. Thomas,* 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713).  "[A] defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.*  "The question is whether counsel's representation

amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* Moreover,

> [t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Boyles*, 2004 S.D. 31, ¶ 27, 677 N.W.2d at 540 (quoting *Siers v. Class*, 1998 S.D. 77, ¶ 12, 581 N.W.2d 491, 495).

[¶15.]      "To establish prejudice, there must be 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hannemann*, 2012 S.D. 79, ¶ 11, 823 N.W.2d at 360 (quoting *Thomas*, 2011 S.D. 15, ¶ 28, 796 N.W.2d at 715). "Ultimately, . . . the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.*

### *Case investigation*

[¶16.]      Fast Horse contends that trial counsel was ineffective because she failed to interview the victim's boyfriend. Fast Horse argues that the victim's boyfriend could have been a source of information to attack the victim's credibility because the victim completed a medical questionnaire in which she stated that she had not had sexual intercourse within 72 hours prior to the rape even though the victim's boyfriend's DNA was present in the victim and on her undergarments. Fast Horse contends that "[the victim's boyfriend] was an important source of information about [the victim's] sexual activity during the time frame of the alleged

rape." And Fast Horse alleges that "[i]n the end, [the victim's boyfriend] might not have been called as a witness for the defense, but he surely had information that was pertinent to the case."

[¶17.] "We have held that 'standing alone, the fact that defense counsel failed to investigate a witness does not by itself satisfy the prejudice prong of *Strickland.*'" *Boyles*, 2004 S.D. 31, ¶ 31, 677 N.W.2d at 542 (quoting *Siers*, 1998 S.D. 77, ¶ 25, 581 N.W.2d at 497-98). And, in order for Fast Horse to establish prejudice, "he must show 'that the witness would have testified and that their testimony would have *probably* changed the outcome of the trial.'" *Id.* "[S]peculation about the existence of a witness and *what the witness might say* is [also] inadequate to undermine confidence in the outcome and to establish the prejudice prong of a claim of ineffective assistance of counsel." *Fast Horse v. Weber* (*Fast Horse I*), 1999 S.D. 97, ¶ 18, 598 N.W.2d 539, 544 (emphasis added).

[¶18.] Trial counsel testified that she made a tactical decision not to solicit any testimony from the victim's boyfriend "[b]ecause all he would have really done is confirm that [victim and victim's boyfriend] had had sex." Trial counsel stated that if the victim's boyfriend had confirmed that the two had sexual intercourse,

> all it would have turned out to be is "So [the victim] was mistaken when she told the doctor when she[ ] [was] under the influence of alcohol and marijuana and had just been under this traumatic event, so she had given the ER doctor inaccurate information about having sex in the last 72 hours. Big deal."

[¶19.] We agree with the habeas court that even if trial counsel should have interviewed the victim's boyfriend, Fast Horse did not offer any specific evidence that demonstrated that trial counsel would have found relevant evidence from the

victim's boyfriend's testimony that would have probably changed the outcome of the trial. As noted by trial counsel, testimony from the victim's boyfriend would not have informed the jury as to whether the encounter between Fast Horse and the victim was consensual or nonconsensual. And such testimony might have clarified any credibility questions the jurors may have had regarding the victim's activities that evening based on her responses to the medical questionnaire. Indeed, trial counsel took this into consideration and testified that the victim's boyfriend's testimony could have hurt the position that the defense was trying to establish—the victim's lack of truthfulness. Additionally, Fast Horse failed to show that the victim's boyfriend would have testified at trial and only speculates as to what information the victim's boyfriend would have testified to had he been called to testify. Taken together, Fast Horse's argument is insufficient to establish the prejudice prong of the *Strickland* test. Therefore, we cannot say that the habeas court erred in its decision as to this point.

[¶20.] Fast Horse also alleges that his trial counsel failed to obtain video surveillance footage from a convenience store that Fast Horse claimed he went to with the victim on the night the rape occurred. Fast Horse contends that trial counsel obtained video surveillance footage from other convenience stores but not from the store identified by Fast Horse.

[¶21.] Trial counsel's uncontroverted testimony at the habeas hearing established that she and her staff investigated video surveillance footage, but were unsuccessful in their efforts to obtain the specific video surveillance footage identified by Fast Horse. Additionally, the record does not demonstrate nor does

Fast Horse offer any explanation to this Court why this evidence was important or relevant. As the habeas court determined, Fast Horse failed to present any evidence to meet the first ineffective assistance of counsel prong. There is nothing in the record to indicate that counsel's failure to obtain the requested video surveillance footage was any fault of her own. And, in any event, Fast Horse failed to establish that had this evidence been obtained, it would have created a reasonable probability the result of the proceeding would have been different. Therefore, the habeas court's determination as to this issue is affirmed.

***Counsel's advice on maximum possible penalty***

[¶22.] Fast Horse alleges that trial counsel was ineffective because trial counsel did not give Fast Horse correct advice as to the maximum possible penalty he faced if convicted of the underlying charge of kidnapping and the part two information. Fast Horse maintains that he was prejudiced in that he would have been willing to consider a plea bargain offer had he known that he could have received less than a mandatory life sentence.

[¶23.] At Fast Horse's arraignment prior to trial in October 2007, the arraigning court correctly advised Fast Horse that the kidnapping charge was a class C felony and punishable by up to life in prison. The arraigning court also discussed the legal effect of the part two information. Counsel for the State, however, advised the arraigning court that because of the part two information, the maximum penalty for the kidnapping charge would be a class B felony, a mandatory life sentence. The arraigning court then advised Fast Horse as to the same. This advice was incorrect, however. The South Dakota Legislature amended SDCL 22-7-

7 in 2005 to state, in pertinent part, that the enhancement would "in no circumstance . . . exceed the sentence for a Class C felony." *See* 2005 S.D. Sess. Laws ch. 120, § 383. The amendment was effective July 1, 2006. Thus, Fast Horse actually faced a maximum penalty of life in prison and not a mandatory life sentence.

[¶24.]     Following trial, at the July 28, 2008 arraignment hearing in relation to Fast Horse's part two information, the trial court correctly advised Fast Horse that the part two information would not "affect the penalty for kidnapping in the first degree, as [the] maximum penalty for that charge is life imprisonment." Fast Horse pleaded guilty to the part two information. Additionally, trial counsel became aware of the arraigning court's mistaken advisement that same day and discussed the correct penalty with Fast Horse.

[¶25.]     At sentencing on October 10, 2008, trial counsel emphasized that Fast Horse "ha[d] made a lot of bad decisions throughout his life, but [that] he ha[d] steadfastly said from the very beginning of this case that he did not rape [the victim]." And prior to making its final sentencing determination, trial court again stated that the first-degree kidnapping charge was a class C felony.

[¶26.]     As the habeas court determined, Fast Horse does not present any evidence to show how his trial counsel's failure to identify the correct maximum penalty for the kidnapping charge prejudiced him. As established by trial counsel's testimony, Fast Horse had always maintained his innocence to the charged offenses and a desire to go trial. Trial counsel also testified that she would never advise a client to plead guilty to something that the client contends he or she did not do in

order to receive a lighter sentence. Thus, even if counsel's performance may have fallen below an objective standard of reasonableness, Fast Horse did not identify how this performance prejudiced him. Accordingly, we affirm the habeas court on this issue.

***Plea bargain***

[¶27.]      Fast Horse argues that his trial counsel was ineffective because she failed to obtain a plea bargain offer for him. He contends that he would have considered a plea bargain offer if he had known that he could have received less than a mandatory life sentence. Fast Horse asserts that because his trial counsel incorrectly advised Fast Horse as to the maximum penalty he faced, her mistake affected how trial counsel represented Fast Horse in the plea bargaining phase of his case.

[¶28.]      "[A] defendant has no right to be offered a plea[.]" *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1410, 182 L. Ed. 2d 379 (2012). *See State v. Miller*, 2006 S.D. 54, ¶ 16, 717 N.W.2d 614, 619 (stating that "there is no constitutional right to be offered the opportunity to plea bargain"). Bengford testified that a plea offer had been constructed in Fast Horse's case. The offer "was that if [Fast Horse] [pleaded] guilty to the second degree rape, and the Part Two Information, he would be facing up to life, and we would be seeking a life sentence, if he [pleaded] to that." Bengford further testified that the State planned to seek the maximum penalty if Fast Horse pleaded guilty to second-degree rape. Because of Fast Horse's violent criminal past, Bengford stated that any plea deal that would have been constructed for Fast Horse would not have been a generous offer and that a significant sentence

was appropriate. Bengford did not communicate this offer to Fast Horse's trial counsel. After reviewing his notes from the file, Bengford testified that the offer "was written down by the other prosecutor in the case, Colleen Moran. And . . . the [State's] file indicates that the offer was relayed by [Moran] at the dispositional conference." Bengford did not recall whether Fast Horse responded to the offer. Moran was not called to testify at the habeas hearing.

[¶29.]     The habeas court correctly concluded that Fast Horse's argument that his trial counsel was ineffective for failing to obtain a plea bargain lacked evidentiary support. Even though Bengford testified that a plea offer was constructed and that notes from the State's file indicated that Moran communicated the offer to Fast Horse, Bengford did not personally offer a plea to Fast Horse nor was Moran called to testify to confirm whether a plea offer was ever made to Fast Horse. The habeas court was left to rely on the testimony of trial counsel and her notes from the proceedings. And the habeas court found the testimony of Fast Horse's counsel to be credible. *Boyles*, 2004 S.D. 31, ¶ 23, 677 N.W.2d at 540 (internal citations omitted) (stating that "[c]redibility determinations are matters for the trier of fact, . . . and we will not substitute our judgment for that of the judge who saw the demeanor and heard the testimony of the witnesses"). In relying on her notes from the proceedings, trial counsel testified that the State never communicated an offer to the defense. She testified that at the dispositional conference, Bengford indicated that there would not be any plea offers. Trial counsel's testimony further reflects that Fast Horse was not interested in a plea bargain, that he maintained his innocence to the charged offenses, and that he

-11-

wanted to go to trial. Trial counsel testified that she would never advise a client to plead guilty to something that the client contends he or she did not do in order to receive a lighter sentence.

[¶30.] Fast Horse contends that two recent United States Supreme Court decisions support his argument. He cites to *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) arguing that "[t]he U[nited] S[tates] Supreme Court has recently affirmed that defendants have a right to competent counsel during the plea bargaining process." He also cites *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) arguing that "an attorney who does not even request an offer because of an erroneous belief about the maximum possible penalty or to at least attempt to save his/her client from serving many years in prison is not effective."

[¶31.] In *Lafler*, the United States Supreme Court decided how to apply *Strickland's* prejudice test when ineffective assistance results in the defendant's *rejection of a plea offer* and the defendant is convicted at trial. ___ U.S. at ___, 132 S. Ct. at 1384-91. In *Frye*, the United States Supreme Court stated that

> as a general rule, defense counsel has the duty to communicate *formal* offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to the rule need not be explored here, for the offer was a *formal one* with a fixed expiration date.

*Id.* at ___, 132 S. Ct. at 1408 (emphasis added). The Court in *Frye* held that counsel's failure to inform Frye of the written plea offer before it expired fell below an objective reasonableness standard. *Id.* at ___, 132 S. Ct. at 1408-10. The Court also held that Frye was required to show "not only a reasonable probability that he

would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." *Id.* at 1410-11.

[¶32.] Our review of these two cases demonstrates that they are distinguishable from the present case. Both *Lafler* and *Frye* involved undisputed plea offers from the prosecution to the defendant. Here, while Bengford testified that the notes from the State's file indicated that Moran communicated the offer at the dispositional conference, the record does not contain any evidence that a plea offer was actually communicated to Fast Horse. Bengford did not personally offer a plea to Fast Horse nor was Moran called to testify to confirm whether a plea offer was made to Fast Horse. Thus, the habeas court was left with the testimony and notes of Fast Horse's trial counsel, which confirmed that no plea bargain was ever offered to Fast Horse. Furthermore, Fast Horse never wanted to enter into a plea bargain and Fast Horse always maintained his innocence to the charged offenses. The habeas court found this testimony to be credible. Accordingly, the habeas court's determination as to this point is affirmed.

### Victim's credibility

[¶33.] Fast Horse contends that his trial counsel was ineffective because trial counsel did not adequately attack the victim's credibility with regard to victim's claim that Fast Horse had raped her. Specifically, he argues that the victim's answer in a medical questionnaire that she had not had sexual intercourse within 72 hours of the rape contradicted the DNA evidence. Fast Horse alleges that trial counsel should have re-called the victim and medical witnesses in order to attack

the credibility of the victim by presenting the victim's contradictory statement to the jury. Fast Horse contends that the jury was left to rely on trial counsel's statements in closing arguments as to the inconsistencies.

[¶34.] Trial counsel testified that the defense's theory at trial was that Fast Horse and the victim had consensual sexual intercourse. In explaining her strategy, counsel testified,

> [i]f I would have recalled [the victim] just to rehash [the questionnaire answer issue], then [the State] would have had another chance to have her say, "Well, even though you were wrong about the 72 hours, you weren't wrong about him kidnapping you. You weren't wrong about him taking you here. You weren't wrong about him doing this. You weren't wrong about him doing that." It would have given the jury another chance to be more sympathetic, and the last things they hear would be all of the information I wouldn't want them to hear.

[¶35.] The habeas court determined that trial counsel's decision to not re-call the victim or medical witnesses was sound trial strategy. The habeas court noted that by calling the victim back to the stand, the defense could have potentially created more sympathy for the victim and would have allowed the victim to explain her statement in the medical questionnaire in some way that would have been consistent with the DNA testimony. We agree. The decision by trial counsel was defensible and sound trial strategy. Based on counsel's trial strategy and rationale for such strategy, the habeas court correctly determined that trial counsel was not ineffective.

[¶36.] **2. Whether Fast Horse was denied a fair trial when the trial court limited his ability to cross-examine the victim.**

[¶37.] Fast Horse argues that he was denied a fair trial when the trial court limited his ability to cross-examine the victim about her sexual activity in the 72

-14-

hours prior to the rape and about her arrest on a drug charge, which occurred after the rape. Fast Horse asserts that this information was important because it would have impeached the victim's credibility.

[¶38.] At trial, the court determined that cross-examination of the victim concerning her drug charge was not relevant to her ability to recall events from the night of the rape and that Fast Horse was trying to attack the victim's character in an impermissible manner. *Fasthorse*, 2009 S.D. 106, ¶ 15, 776 N.W.2d at 238-39. The trial court also ruled that the victim's statements on the medical questionnaire concerning her sexual activity within 72 hours prior to the rape were not relevant and the proper foundation had not been laid for the introduction of such evidence. *Id.* ¶ 16, 776 N.W.2d at 239.

[¶39.] In *Fasthorse*, we agreed with the trial court and held that cross-examination of the victim concerning her drug charge was not relevant to the victim's testimony concerning the rape. *Id.* ¶ 15, 776 N.W.2d at 238-39. As to the limitation on the cross-examination concerning the victim's sexual activity on the night of the rape, we held that even if the trial court's ruling was in error, Fast Horse was not prejudiced because the results of the DNA test were eventually presented to the jury, showing the presence of DNA from the victim, the victim's boyfriend, Fast Horse, and an unknown contributor. *Id.* ¶ 17, 776 N.W.2d at 239. Additionally, Fast Horse was not prejudiced by the limited cross-examination on this topic because trial counsel was allowed to present Fast Horse's theory of the case to the jury in her closing argument, including the impeaching DNA evidence.

*Id.* Ultimately, we held that the trial court did not abuse its discretion. *Id.* ¶¶ 15-16, 776 N.W.2d at 239.

[¶40.]     The habeas court correctly determined that these arguments were res judicata as they had been specifically addressed by this Court in *Fasthorse. See id.* ¶¶ 15-17, 776 N.W.2d at 238-39. It is settled law "that issues, which were raised in a direct appeal, are res judicata on a writ of habeas corpus." *Rhines v. Weber*, 2000 S.D. 19, ¶ 59, 608 N.W.2d 303, 316. Consequently, these issues are barred from consideration by this Court.

[¶41.]     **3.     Whether Fast Horse was denied due process of law when the arraigning court incorrectly advised Fast Horse of the maximum possible penalty.**

[¶42.]     Finally, Fast Horse argues that he was denied due process of law when the arraigning court incorrectly advised Fast Horse of the maximum possible penalty he faced. Fast Horse contends that the arraigning court's incorrect advice resulted in a due process violation because Fast Horse's trial counsel was also "laboring under this [same] mistake" and it affected "how [trial counsel] represented [Fast Horse] in the plea bargaining phase of his case."

[¶43.]     As was discussed previously, the arraigning court incorrectly advised Fast Horse that he faced mandatory life in prison if convicted of the kidnapping charge and the part two information. However, pursuant to the 2005 amendment of SDCL 22-7-7, Fast Horse actually faced a maximum of life in prison. At the arraignment on the part two information, the trial court correctly advised Fast Horse of the maximum penalty.

[¶44.] The habeas court determined Fast Horse's argument as to this issue lacked evidentiary support. We agree. Fast Horse does not offer any evidence as to how the arraigning court's incorrect statement regarding the maximum penalty affected his ability to obtain a plea bargain through his trial counsel. The trial court correctly advised Fast Horse of the maximum penalty at the arraignment hearing prior to Fast Horse's guilty plea to the part two information. Additionally, Fast Horse had no interest in pursuing a plea bargain prior to trial; always maintained his innocence to the charged offenses; and at all times wanted to go to trial. Furthermore, Fast Horse received a lesser sentence from the trial court than the sentence any plea offer would have provided him. Indeed, Bengford testified that any plea offer from the State would not have been for anything less than the maximum—a life sentence. And Fast Horse did receive less than the maximum from the trial court—60 years in prison. Lastly, the only evidence presented to support his position is Fast Horse's own testimony that he would have considered a plea bargain offer for anything less than a life sentence. But, trial counsel testified that she has never encouraged a client to plead guilty to something he asserts that he did not do in order to receive a more favorable sentence. Accordingly, the habeas court correctly determined that Fast Horse failed to demonstrate how the arraigning court's incorrect statement regarding the maximum possible sentence violated his due process rights.

**CONCLUSION**

[¶45.] The habeas court correctly determined that Fast Horse failed to demonstrate ineffective assistance of counsel. Further, Fast Horse's due process

claims regarding cross-examination of the victim concerning her sexual activity within 72 hours before the rape and her post-rape drug charge were res judicata, having been resolved in Fast Horse's direct appeal. Lastly, the habeas court correctly determined that Fast Horse's argument that the arraigning court's mistaken advisement denied him due process lacked evidentiary support.

[¶46.] Affirmed.

[¶47.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and BARNETT, Circuit Court Judge, concur.

[¶48.] BARNETT, Circuit Court Judge, sitting for SEVERSON, Justice, disqualified.