#26221-a-SLZ

**2012 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

DAWN HANNEMANN,                            Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RONALD K. ROEHR
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                      and appellee.


KATE M. BENSON of
Austin, Hinderaker, Hopper,
  Strait & Benson, LLP
Watertown, South Dakota                    Attorneys for defendant
                                      and appellant.


* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **11/20/12**

#26221

ZINTER, Justice

[¶1.]    Dawn Hannemann was convicted of arson in connection with a fire in her apartment.  She appeals arguing that the circuit court abused its discretion: (1) in denying her motions for judgment of acquittal and new trial based on a claim of ineffective assistance of trial counsel; and (2), by excluding an out-of-court statement made by her estranged sister.  We affirm.

*Facts and Procedural History*

[¶2.]    On the night of October 31, 2010, Hannemann was alone in her Watertown apartment that she shared with her teenage son.  She had taken her son to visit her daughter in Fargo, North Dakota.  In the early morning hours of November 1, 2010, a fire started on the first floor of the apartment.  Hannemann testified that she attempted to exit through the front door on the first floor.  But because of heavy smoke, she opened a second-story-bedroom window, screamed for help, and jumped, injuring herself.  Emergency responders arrived, Hannemann was transported to a hospital, and firefighters extinguished the fire.

[¶3.]    The Watertown Fire Department, Allstate Insurance Company (Hannemann's insurer), and Midwest Family Mutual Insurance Company (the apartment owner's insurer) conducted simultaneous investigations.  The Allstate and Midwest investigators believed that the fire had been intentionally set.  One Allstate investigator collected carpet samples and sent them to a chemist to be tested for ignitable liquid residue.  Another Allstate investigator sent Hannemann's computer to an electrical engineer to determine whether it played a role in the fire.

The Midwest investigator sent the smoke alarms and an electrical outlet from the apartment to a second electrical engineer for analysis.

[¶4.]    Hannemann's court-appointed attorney requested a court-appointed computer expert and made a lengthy discovery motion.  Counsel did not request a court-appointed fire investigator, electrical engineer, or chemist.  Additionally, counsel did not obtain independent testing of the carpet samples or electrical devices, and counsel did not make a *Daubert* motion to challenge the reliability of the State's experts' opinions.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[¶5.]    During the course of a three-day jury trial, the three fire investigators employed by Allstate and Midwest testified that the fire had been intentionally set.  The two electrical engineers testified that the electrical devices in the apartment had not caused the fire.  The chemist testified that the carpet sample from the fire's place of origin contained residue from an ignitable accelerant, while samples from other places in the room did not.

[¶6.]    Additional evidence also suggested arson.  The smoke detectors in the apartment were hard-wired to a circuit breaker with back-up battery power in case of electrical failure.  Analysis of these systems revealed that the electrical circuit for the smoke detectors had been turned off and the back-up batteries for three of the four smoke alarms had been removed.  Fire investigators also noted that a substantial amount of Hannemann's clothing, shoes, and decorative wall hangings had been removed prior to the fire.  After the fire, Hannemann filed a $53,000 insurance claim for damage caused by the fire.

[¶7.] Hannemann's testimony at trial was also inculpatory. Shortly after the fire, Hannemann told law enforcement that she had not touched the smoke detectors in the apartment. At trial, however, Hannemann admitted that she may have removed a battery. Hannemann also admitted that she had browsed the Internet on the night of the fire. Evidence from Hannemann's computer revealed Internet searches on smoke alarms, renter's insurance, house fires, and Allstate's insurance coverage in South Dakota.

[¶8.] Hannemann testified that she did not know how the fire started, but that if it was intentionally set, she suspected Ashley Tofteland, her estranged sister. To support this theory, Hannemann wanted her mother, Mary Briggs, to testify. Hannemann's trial counsel gave Hannemann a subpoena to deliver to Briggs. Trial counsel did not utilize the services of a sheriff or process server to secure the appearance of Briggs. Briggs did not appear to testify. Briggs later explained that she did not appear because she was not properly served with a subpoena.

[¶9.] Hannemann also sought to support her theory that Tofteland set the fire through the testimony of Leallen Endres, a furniture dealer. Hannemann attempted to elicit testimony from Endres that Tofteland came to Endres' business stating that Hannemann was going to blame the fire on a couch that Endres sold Hannemann. The circuit court excluded Endres' proposed testimony as inadmissible hearsay.

[¶10.] The jury found Hannemann guilty of arson by starting a fire with intent to destroy or damage property in order to collect insurance. After trial, Hannemann obtained a new court-appointed attorney who moved for a judgment of

acquittal and new trial, claiming ineffective assistance of trial counsel. After a hearing, both motions were denied.*

*Decision*

[¶11.]	To prevail "on a claim of ineffective assistance of counsel, a defendant must show that his counsel provided ineffective assistance and that he was prejudiced as a result." *State v. Thomas*, 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713. "To establish ineffective assistance, a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* "The question is whether counsel's representation 'amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.'" *Id.* (quoting *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011)). To establish prejudice, there must be "a reasonable probability that, but for counsel[']s unprofessional errors, the result of the proceeding would have been different." *Id.* ¶ 28. "Ultimately, . . . 'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068-69, 80 L. Ed. 2d 674 (1984)).

---

\*	"We review a trial court's denial of a motion for a new trial under the abuse of discretion standard." *State v. Zephier*, 2012 S.D. 16, ¶ 15, 810 N.W.2d 770, 773. "We review the denial of a motion for judgment of acquittal as a question of law under the de novo standard." *State v. Danielson*, 2012 S.D. 36, ¶ 8, 814 N.W.2d 401, 405. "On appeal, the question before this Court is whether the evidence was sufficient to sustain the conviction[]." *Id.* "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

[¶12.]    Hannemann argues that she is entitled to have her ineffective assistance claim resolved on direct appeal because she may be released from custody before a habeas corpus action could be completed. However, "it is only through habeas corpus that a sufficient record can be made to allow the appropriate review" of a claim of ineffective assistance of counsel. *State v. Petersen*, 515 N.W.2d 687, 688 (S.D. 1994). Ineffective assistance claims reviewed after the filing of a habeas petition "allow 'attorneys charged with ineffectiveness [to] explain or defend their actions and strategies[.]'" *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714 (alteration in original). The development of a habeas record also provides this Court with "a more complete picture of what occurred[.]" *Id.* Only in "rare cases" will "an ineffective-assistance-of-counsel claim [be] ripe for review on direct appeal[.]" *Id.* ¶ 20. We "depart from this principle only when trial counsel was 'so ineffective and counsel's representation so casual as to represent a manifest usurpation of [the defendant's] constitutional rights.'" *Id.* ¶ 23 (alteration in original).

[¶13.]    Hannemann argues that trial counsel was sufficiently deficient on a number of matters to permit review on direct appeal. Hannemann first contends that counsel was deficient in failing to secure an arson expert. Hannemann argues that without an arson expert, trial counsel was unable to properly challenge the admissibility of the State's scientific evidence through pre-trial motions and cross-examination. Hannemann relies on three cases holding that failing to properly rebut the State's evidence relating to arson, failing to consult with an arson expert, or failing to challenge expert opinions related to arson constitutes ineffective

assistance of counsel. *See Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007); *Dugas v. Coplan*, 428 F.3d 317 (1st Cir. 2005); *United States v. Hebshie*, 754 F. Supp. 2d 89 (D. Mass. 2010).

[¶14.] These cases are distinguishable because each involved a factual record developed through some kind of habeas proceeding. In this case, the record is limited to the trial record. Significantly, although Hannemann's fire investigator's affidavit, submitted in support of the motion for new trial, attacked the State's evidence of an intentional fire, the State has identified trial evidence that contradicts that affidavit. This conflicting evidence presents us with the following factual disputes: (1) whether the scene was properly preserved; (2) what inferences should have been drawn from the presence or absence of accelerant containers; (3) whether there was adequate testing of the identified accelerant; and (4), whether appropriate fire investigation protocols were followed. Further, Hannemann testified that she believed the perpetrator was her estranged sister, Ashley Tofteland. Accordingly, trial strategy may have been the motivation for trial counsel's failure to utilize an arson expert witness to challenge the State's scientific evidence indicating that the fire was intentionally set. All of these factual questions are more appropriately resolved in a habeas hearing where Hannemann's arguments, and particularly the untested fire investigator's affidavit, can be tested through cross-examination.

[¶15.] Hannemann also contends that trial counsel was ineffective in failing to properly subpoena Briggs. Hannemann points out that there is little if any argument available to justify the failure to properly subpoena a witness. Briggs

testified at the hearing on the motion for new trial that her daughters, Tofteland and Hannemann, did not get along. Briggs also testified that there was a key to Hannemann's apartment in Briggs's apartment. But Briggs did not know why the key was in Briggs's apartment. Additionally, Hannemann testified to the strained relationship with Tofteland. Therefore, even if trial counsel's failure to properly serve Briggs was ineffective assistance under prevailing norms, the direct appeal record does not demonstrate prejudice; i.e. that Briggs's testimony would have changed the result of the trial.

[¶16.] Hannemann further contends that trial counsel was ineffective in failing to demonstrate a potential bias of the fire investigators hired by the insurance companies. Hannemann contends that the investigators employed by the insurers had a financial interest in finding that the fire was intentionally set. Although trial counsel did not cross-examine those experts regarding the entities that employed them, the fire investigators disclosed that information in their direct examination. Therefore, Hannemann has not demonstrated that failing to ask about the same information on cross-examination was ineffective assistance or that it was prejudicial.

[¶17.] Hannemann finally contends that it is appropriate to review her ineffective assistance of counsel claim because this case is like *State v. Thomas*, 2011 S.D. 15, 796 N.W.2d 706 (reviewing an ineffective assistance of counsel claim on direct appeal). We disagree. In *Thomas*, there was "no conceivable strategic motive" for defense counsel's conduct and the evidence involving trial error was the only evidence directly implicating the defendant. *See id.* ¶¶ 25, 30. In

Hannemann's case, there is inculpatory evidence not involving alleged trial errors. Further, most of trial counsel's decisions could have involved trial strategy. Finally, as previously noted, Hannemann's post-trial evidence raises disputes of fact relating to the ineffective assistance and prejudice claims that can only be resolved through a habeas hearing.

[¶18.] Because the existing circuit court record does not establish a "manifest usurpation of [the defendant's] constitutional rights," Hannemann's ineffective assistance of counsel claim is not ripe for review. *See id.* ¶ 23 (alteration in original). The circuit court did not abuse its discretion in denying Hannemann's motions.

[¶19.] Hannemann also argues that the circuit court erred in excluding the out-of-court statement that Tofteland made to Endres. Hannemann claims that the statement was not hearsay because it was not offered to prove the truth of the matter asserted and because it was a verbal act. "A trial court's evidentiary rulings are presumed to be correct and are reviewed under the abuse of discretion standard." *State v. Harris*, 2010 S.D. 75, ¶ 8, 789 N.W.2d 303, 307.

[¶20.] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(c)). In this case, Tofteland (Hannemann's estranged sister) told Endres (the furniture dealer) that Hannemann would blame the fire on a couch that Endres sold to Hannemann. Hannemann's trial counsel called Endres to repeat that out-of-court statement at trial. Hannemann argued

that the testimony was not hearsay because it was not being offered to prove the truth of the matter asserted. The circuit court disagreed.

[¶21.] Endres' proposed testimony was inadmissible hearsay. Hannemann proposed to have Endres testify to an out-of-court statement made to him by Tofteland. This proposed testimony was proffered to support Hannemann's theory that Tofteland set the fire. The testimony would have been used to prove the truth of the matter asserted; i.e. that Tofteland was making unusual claims about the fire. Hannemann failed to identify any other relevant purpose for the proposed testimony. Therefore, the proposed testimony was an out-of-court statement offered to prove the truth of the matter asserted.

[¶22.] The statement was also inadmissible as a "verbal act." Tofteland's statement was not "made contemporaneously with or immediately preparatory to an act which [was] material to the litigation that tend[ed] to explain, illustrate, or show the object or motive of an otherwise equivocal act and which [was] offered irrespective of the truth of any assertion" in the statement. *See Harris*, 2010 S.D. 75, ¶ 13, 789 N.W.2d at 309. The circuit court did not abuse its discretion in excluding Endres' proposed testimony repeating Tofteland's out-of-court statement.

[¶23.] Affirmed.

[¶24.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.