#26783-a-GAS

**2014 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,          Plaintiff and Appellee,

     v.

JERRY LEE CRAIG,          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TONY L. PORTRA
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN F. MINES
Assistant Attorney General
Pierre, South Dakota          Attorneys for plaintiff
         and appellee.


SCOTT R. BRATLAND
Watertown, South Dakota          Attorney for defendant
         and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 27, 2014

OPINION FILED **07/02/14**

SEVERSON, Justice

[¶1.]        C.T., then age nine, reported that her maternal grandfather—Jerry Craig—sexually abused her.  A jury convicted Craig of three counts of first degree rape, three counts of sexual contact with a child under the age of sixteen, and one count of aggravated incest.  Craig appeals, arguing the circuit court erred by restricting questioning, allowing him to proceed pro se at sentencing, and erred in its sentence.  He also argues his trial counsel was ineffective.  We affirm.

## Background

[¶2.]        In May 2012, C.T. and her younger siblings (brother (S.C.) and sister (A.T.)) lived with Craig and his wife in Presho, South Dakota.  As a result of a disagreement between Craig and the children's mother (A.C.), A.C. drove to Presho on May 10, 2012, to bring the children back with her to Aberdeen, South Dakota.  C.T. alleged to A.C. that Craig sexually abused her.

[¶3.]        A.C. reported the alleged abuse to the Department of Social Services (DSS) on May 11, 2012.  DSS contacted law enforcement in Aberdeen.  Officer Vance McInerney responded and discussed the allegations with A.C.  Officer McInerney then arranged an interview with Child's Voice (a medical evaluation center that evaluates children regarding the possibility of both child physical and sexual abuse).

[¶4.]        Colleen Brazil of Child's Voice interviewed C.T. on May 16, 2012.  C.T. alleged that inappropriate contact with Craig occurred, including kissing on the lips, touching and penetrating her private parts, making her touch his private part,

and rubbing and sucking her chest. Brazil interviewed C.T.'s siblings on May 22, 2012.

[¶5.]    On June 5, 2012, Officer Tanner Jondahl interviewed Craig. Craig denied he sexually abused C.T. and claimed A.C. was retaliating against him. Craig did admit one incident when he awoke and realized his hand was touching C.T., claiming he mistakenly thought he was holding his wife.

[¶6.]    On August 24, 2012, the State charged Craig with one count of first degree rape, three counts of sexual contact with a child under the age of sixteen, and one count of aggravated incest. A second indictment on April 19, 2013, charged Craig with three counts of first degree rape, three counts of sexual contact with a child under the age of sixteen, and one count of aggravated incest. The State dismissed the previous indictment. On May 16, 2013, Craig appeared before the Fifth Judicial Circuit Court for arraignment. He pleaded not guilty. After several motions and hearings, a jury trial commenced on June 4, 2013.

[¶7.]    At trial, Brazil testified for the State about C.T.'s statements. Craig wished to question Brazil about conclusions drawn from her interview with C.T.'s brother (S.C.) as to S.C.'s credibility. The circuit court denied Craig's request on several grounds: not complying with SDCL 19-16-38; not a sufficient indicia of reliability; no showing S.C. would testify or was unavailable; the testimony was not relevant; and if allowed, "any value would be substantially outweighed by the confusion it would cause the jury" as the testimony would result in a trial within a trial. On June 5, the jury found Craig guilty.

[¶8.]     Before sentencing, Craig requested that he be allowed to proceed without counsel.  The circuit court held hearings on June 24, 2013, and July 8, 2013, to address Craig's request and address his questions.  The circuit court allowed Craig to proceed pro se but asked his appointed attorney to stay apprised.  Craig did not cooperate with the presentence report or complete a psycho-sexual evaluation.

[¶9.]     On July 17, 2013, the circuit court sentenced Craig to 50 years imprisonment on counts one, two, and three, respectively, to be served consecutively.  The circuit court further sentenced Craig to 10 years imprisonment for each of the remaining counts, to be served concurrently with the 150 years imposed on the first three counts.

[¶10.]     After sentencing, Craig requested court-appointed counsel, who filed an amended notice of appeal on August 15, 2013.  Craig raises as issues: (1) Whether the circuit court abused its discretion by restricting questioning about the victim's brother's (S.C.'s) statements; (2) Whether the circuit court abused its discretion by allowing Craig to proceed pro se at sentencing; (3) Whether Craig's sentence constitutes cruel and unusual punishment; and (4) Whether Craig received ineffective assistance of counsel.

### Analysis

[¶11.]     **(1)     Whether the circuit court abused its discretion by restricting witness questioning about S.C.'s statements.**

[¶12.]     Craig argues the circuit court abused its discretion by not allowing him to question Brazil about statements made by the victim's brother—S.C.  Craig attempted to present evidence that S.C. was interviewed, made statements about

sexual abuse, and that the professionals at Child's Voice found him not to be credible. Craig sought to use the testimony to support his theory that the children's mother (A.C.) had coached the children as to what to say. Craig asserts SDCL 19-16-8 (Rule 803(4)) (hearsay exception for statements made for medical diagnosis or treatment) allowed the questioning. The State argues Craig did not raise SDCL 19-16-8 (Rule 803(4)) before the circuit court, thus Craig's argument is waived; or in the alternative, Craig's argument is without merit because the testimony is not relevant to this case.

[¶13.] The "ultimate decision to admit or not admit evidence is reviewable under the 'abuse of discretion' standard[.]" *State v. Herrmann*, 2004 S.D. 53, ¶ 8, 679 N.W.2d 503, 507 (quoting *State v. Davi*, 504 N.W.2d 844, 849 (S.D. 1993)).

[¶14.] Craig did not mention or argue SDCL 19-16-8 (Rule 803(4)) to the circuit court, thus his argument that it should apply is waived. *See State v. Eidahl*, 495 N.W.2d 91, 94 (S.D. 1993). But, a hearsay exception is not determinative. Craig sought S.C.'s statements through Brazil's testimony to provide evidence that A.C. coached the children, not to prove the truth of what they asserted (that sexual abuse occurred). In that regard, S.C.'s statements were not hearsay. *See* SDCL 19-16-1(3) (Rule 801(c)) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *State v. Harris*, 2010 S.D. 75, ¶¶ 13-15, 789 N.W.2d 303, 308-09. As a result, whether Craig raised a hearsay exception is irrelevant.

[¶15.] Regardless, the circuit court found S.C.'s statements not admissible on other grounds, one being relevancy. The circuit court found "it to be of very little

relevance in that whether one child made an allegation that was substantiated or not, does not prove or disprove that another child was or was not abused." *See* SDCL 19-12-1 (Rule 401). Indeed, "[e]vidence which is not relevant is not admissible." SDCL 19-12-2 (Rule 402). Further, predicting a "trial within a trial," the circuit court also found the testimony inadmissible because "any value would be substantially outweighed by the confusion that it would cause the jury." *See* SDCL 19-12-3 (Rule 403) (stating evidence may be excluded if its probative value is substantially outweighed by issue confusion, among others).

[¶16.] In the end, questions involving evidence's relevancy and the process of balancing that evidence's probative value versus the danger of confusing the issues are left to the circuit court's sound discretion. *State v. Guthmiller*, 2003 S.D. 83, ¶¶ 28-29, 667 N.W.2d 295, 305-06. Because the circuit court found S.C.'s statements not relevant and any value from them substantially outweighed by the confusion they would cause, the circuit court did not abuse its discretion by prohibiting testimony as to S.C.'s statements.*

---

* Craig's requested testimony may have been improper on other grounds. Essentially, Craig wanted Brazil to testify that S.C.'s claim lacked credibility. "Generally, one witness may not testify as to another witness's credibility or truth-telling capacity because such testimony would invade the exclusive province of the jury to determine the credibility of a witness." *State v. Packed*, 2007 S.D. 75, ¶ 37, 736 N.W.2d 851, 862 (quoting *State v. McKinney*, 2005 S.D. 73, ¶ 32, 699 N.W.2d 471, 481). Although we have allowed a "generalized explanation of a child's capacity to testify[,]" *McKinney*, 2005 S.D. 73, ¶ 33, 699 N.W.2d at 481, and expert testimony regarding the "characteristics of sexually abused children and comparing those characteristics with the account and behavior of a particular child[,]" *State v. Buchholtz*, 2013 S.D. 96, ¶ 25, 841 N.W.2d 449, 457, Craig's requested testimony of Brazil here was a direct, and thus potentially improper, inquiry into a witness's credibility, when additionally the witness did not even testify.

**[¶17.]     (2)     Whether the circuit court abused its discretion by allowing Craig to precede pro se at sentencing.**

[¶18.]     Craig argues that he did not knowingly, intelligently, and voluntarily waive his right to counsel because none of the circuit court's warnings applied to his situation. The State argues the circuit court appropriately warned Craig and that he knowingly, intelligently, and voluntarily waived his right to counsel.

[¶19.]     "In a criminal action a defendant has both a constitutional right to be represented by counsel and a constitutional right to represent himself; it is the defendant's choice." *State v. Hirning*, 2011 S.D. 59, ¶ 13, 804 N.W.2d 422, 426 (quoting *State v. Bruch*, 1997 S.D. 74, ¶ 14, 565 N.W.2d 789, 791). "Appeals asserting an infringement of a constitutional right are reviewed de novo." *Id.* (citing *State v. Asmussen*, 2006 S.D. 37, ¶ 11, 713 N.W.2d 580, 586).

[¶20.]     "[I]n order for a defendant to exercise the right to self-representation and waive the right to representation by counsel, a voluntary, knowing and intelligent waiver must be made by the defendant." *Id.* ¶ 14 (quoting *Asmussen*, 2006 S.D. 37, ¶ 30, 713 N.W.2d at 590). "[A]t a minimum, a defendant 'must be aware of the dangers and disadvantages of self-representation.'" *Id.* ¶ 15 (quoting *Bruch*, 1997 S.D. 74, ¶ 15, 565 N.W.2d at 792).

> On appeal, waiver of the right to counsel will not be found knowingly and intelligently made unless the trial court (1) warns the defendant of the dangers of self-representation or, (2) unless the record indicates circumstances from which this [C]ourt can [determine that] the defendant was aware of the danger and made a knowing and intelligent waiver. While in some cases there may be a record showing a defendant is aware of the pitfalls of self-representation, an admonition from the trial court is preferred as it eliminates any doubt.

*Id.* (quoting *Bruch*, 1997 S.D. 74, ¶ 15, 565 N.W.2d at 792).

[¶21.]     To ensure that a defendant "knows what he is doing and his choice is made with eyes open[,]" *Id.* ¶ 16 (quoting *State v. Raymond* (*Raymond II*), 1997 S.D. 59, ¶ 11, 563 N.W.2d 823, 826), this Court suggested that a trial court provide a five-factor warning to a defendant:

> (1) that presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules governing the conduct of a trial;
>
> (2) that a lawyer has substantial experience and training in trial procedure and that the prosecution will be represented by an experienced attorney;
>
> (3) that a person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, may not make effective use of such rights as the voir dire of jurors, and may make tactical decisions that produce unintended consequences;
>
> (4) that a defendant proceeding pro se will not be allowed to complain on appeal about the competency of his representation; and
>
> (5) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.

*Id.* (quoting *State v. Patten*, 2005 S.D. 32, ¶ 10, 694 N.W.2d 270, 273).

[¶22.]     Here, the circuit court held a presentencing hearing on June 24, 2013. It addressed letters Craig sent indicating his frustration with his appointed counsel. When the circuit court introduced the hearing, it stated: "At some point Mr. Craig had made the court aware that he wished to have a different attorney appointed for him on this matter." Craig interrupted the court, and clarified, "I do not want another attorney, and I do have another letter to offer to the court." The circuit court clarified Mr. Craig's request: "Are you asking the court to appoint you a different attorney or are you asking the court to let you dismiss your attorney and

represent yourself?" Craig responded, "It would be the latter." To which the court

asked, "To represent yourself?" Craig responded, "Yes." The circuit court then

warned Craig of the five factors set forth in our precedent:

> **Court:** Mr. Craig, as I said, I'm obligated to tell you certain
> points, and I would just like you to bear with me because the
> Supreme Court has indicated this is what needs to happen. So
> what you need to consider in deciding whether or not you want
> to represent yourself is that presenting a defense is not a simple
> matter of telling one's story but requires adherence to various
> technical rules governing the conduct of a trial, in this case it
> would be governing the conduct of the sentencing hearing since
> the trial has already happened. That a lawyer has substantial
> experience and training in trial procedure and that the
> prosecution will be represented by an experienced attorney.
> That a person unfamiliar with legal procedures may allow the
> prosecutor an advantage by failing to make objections to
> admissible evidence, may not make effective use of such rights
> as the voir dire of jurors and may make technical decisions that
> produce unintended consequences. That a defendant proceeding
> pro se, meaning representing yourself, will not be allowed to
> complain on appeal about the competency of his representation,
> and finally that the effectiveness of his defense may well be
> diminished by his dual role as attorney and accused. Do you
> understand the information that I've just presented to you?
>
> **Craig:** Yes, but the jury was inflamed against me, I do
> understand, and it went undone.
>
> **Court:** So – given the caution that I've provided you today
> regarding the danger of representing yourself, is it still your
> intention to represent yourself?
>
> **Craig:** Yes, sir, it is.
>
> **Court:** And you would represent yourself at the sentencing
> hearing in this matter?
>
> **Craig:** Yes, sir.

[¶23.]     At another presentencing hearing on July 8, 2013, the circuit court

again asked: "Mr. Craig, are you going to continue to represent yourself?" Craig

responded, "My gosh, yes, if I had done it in the first place, I wouldn't be here like

this." On the day of sentencing, July 17, 2013, the circuit court asked Craig

whether he wished to have assistance from his previous counsel. Craig responded: "No, not by any means."

[¶24.] Here, the circuit court warned Craig of the five factors stated in our precedent. Craig argues, however, that the five factors do not apply to his situation—proceeding pro se at sentencing. We disagree. The five factors warn the defendant of trial aspects that also apply to sentencing, i.e., not just telling a story, technical aspects, experience of opposing counsel, missing objections, waiving ineffective counsel, and diminished effectiveness when taking dual role of attorney and accused. Regardless, the five-factor warning is not a per se requirement for a voluntary, knowing, and intelligent waiver.

[¶25.] "[A]s an alternative to the five factors, a waiver may be constitutionally acceptable 'as long as there are circumstances present that indicate the circuit court was able to ascertain that the defendant was fully aware of the dangers of self-representation.'" *Hirning*, 2011 S.D. 59, ¶ 17, 804 N.W.2d at 427 (quoting *Asmussen*, 2006 S.D. 37, ¶ 31, 713 N.W.2d at 590). Those circumstances depend on the particular facts surrounding each case, "including the background, experience, and conduct of the accused," *Id.*, defendant's involvement in previous criminal trials, representation by counsel before trial, and the explanation for proceeding pro se indicate an awareness of the difficulties of self-representation. *State v. Van Sickle*, 411 N.W.2d 665, 667 (S.D. 1987).

[¶26.] Here, the circuit court had ample opportunities to "ascertain that [Craig] was fully aware of the dangers of self-representation." *Hirning*, 2011 S.D. 59, ¶ 17, 804 N.W.2d at 427 (quoting *Asmussen*, 2006 S.D. 37, ¶ 31, 713 N.W.2d at

590). Those opportunities included presiding over Craig's trial, holding two hearings on this issue, personally addressing Craig, warning Craig of the five factors, and hearing Craig's unequivocal requests to proceed pro se. In the end, "the record indicates circumstances from which this [C]ourt can [determine that Craig] was aware of the danger and made a knowing and intelligent waiver." *Id.* ¶ 15 (quoting *Bruch*, 1997 S.D. 74, ¶ 15, 565 N.W.2d at 792).

[¶27.]     **(3)     Whether Craig's sentence constitutes cruel and unusual punishment.**

[¶28.]     First, Craig argues that the circuit court erred by sentencing Craig without the necessary information. The State argues that the circuit court had sufficient information regarding Craig's background to properly sentence him.

[¶29.]     An appropriate sentence requires that the sentencing court "acquire a thorough acquaintance with the character and history of the [person] before it. This study should examine a defendant's general moral character, mentality, habits[,] social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *State v. Hinger*, 1999 S.D. 91, ¶ 21, 600 N.W.2d 542, 548 (quoting *State v. Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d 575, 580). "The sentencing court should also consider rehabilitation prospects." *Id.* Further, when a conviction is under SDCL 22-22-1.2, a sentencing court receives extra information as spelled out by SDCL 22-22-1.3 ("Any person convicted of a felony violation as provided in subdivisions 22-24B-1(1) to (15), inclusive, and (19) shall have included in the offender's presentence investigation report a psycho-sexual assessment . . . .").

[¶30.] Craig argues error in that the psycho-sexual evaluation was incomplete. But Craig refused to participate fully in the evaluation. As a result, Craig's argument that the evaluation lacked necessary information is without merit.

[¶31.] In addition to receiving the brief psycho-sexual evaluation, the circuit court received a presentence report, observed Craig at trial and at the sentencing hearing, observed Craig's conduct in front of the court, and evaluated witness testimony. The circuit court noted that Craig was 55 years old, had a prior felony, refused to participate in any meaningful way in the psycho-sexual evaluation, and accepted zero responsibility for his crime. The circuit court also noted Craig's refusal to accept responsibility and his blame towards the victim's mother, his attorney, and the court, when it found Craig's rehabilitation prospect to be minimal. On review, the circuit court had sufficient information to "acquire a thorough acquaintance with the character and history of [Craig.]" *Hinger*, 1999 S.D. 91, ¶ 21, 600 N.W.2d at 548 (quoting *Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580).

[¶32.] Next, Craig argues the 150-year sentence imposed was cruel and unusual. The State argues that Craig received a sentence within the statutory limit and was not cruel and unusual considering his crime.

[¶33.] When a defendant challenges a sentence as cruel and unusual under the Eighth Amendment, this Court reviews it for gross disproportionality:

> [W]e first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly

> disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra-and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

*Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580 (citation omitted).

[¶34.] In this case, the circuit court noted Craig's conduct involved repeated sexual abuse of his nine-year-old grand-daughter—a grand-daughter that was placed in his care. Instead of protecting C.T., Craig victimized her. The circuit court aptly stated that the legislature has determined these crimes are very heinous and the court should send a clear message to the defendant and public that this conduct will not be tolerated. We agree, and indicative of that determination, the maximum punishment is life imprisonment. SDCL 22-22-1, SDCL 22-22-1.2, & SDCL 22-6-1. The circuit court sentenced Craig to 50 years imprisonment on counts one, two, and three, respectively, to be served consecutively. The maximum penalty for Craig's remaining counts is fifteen-years imprisonment. SDCL 22-22-7, SDCL 22-22A-3(2), & SDCL 22-6-1. The circuit court sentenced Craig to ten years on each remaining count to run concurrently with the 150-year total sentence.

[¶35.] In review, the jury convicted Craig of a heinous crime with a severe, legislatively-directed penalty, which his sentence was within. Considering the crime, the circumstances here "fail to suggest gross disproportionality[.]" *Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580. As a result, "our review ends." *Id.*

[¶36.] **(4) Whether Craig received ineffective assistance of counsel.**

[¶37.] Craig argues his trial counsel was ineffective for failing to subpoena S.C. and A.C., and for failing to present evidence to the jury regarding C.T.'s

identification of his penis. The State argues counsel's representation was not deficient, and in the alternative, that Craig fails to demonstrate prejudice.

[¶38.] "To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel provided ineffective assistance and that he was prejudiced as a result." *Fast Horse v. Weber*, 2013 S.D. 74, ¶ 14, 838 N.W.2d 831, 836 (quoting *State v. Hannemann*, 2012 S.D. 79, ¶ 11, 823 N.W.2d 357, 360). "To establish ineffective assistance, a defendant must show that counsel's representation fell below an objective standard of reasonableness." *State v. Thomas*, 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713. "The question is whether counsel's representation 'amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.'" *Id.* (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011)). "There is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." *Id.* (quoting *Steichen v. Weber*, 2009 S.D. 4, ¶ 25, 760 N.W.2d 381, 392-93). To demonstrate prejudice, a defendant must show "there is a reasonable probability that, but for counsel[']s unprofessional errors, the result of the proceeding would have been different." *Id.* ¶ 28 (quoting *Dillon v. Weber* (*Dillon II*), 2007 S.D. 81, ¶ 8, 737 N.W.2d 420, 424). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Dillon II*, 2007 S.D. 81, ¶ 8, 737 N.W.2d at 424-25) *See Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068-69, 80 L. Ed. 2d 674 (1984)

("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.").

[¶39.]      First, this Court must determine whether this is one of the "rare cases" where an ineffective-assistance-of-counsel claim is ripe for review on direct appeal. *Hannemann*, 2012 S.D. 79, ¶ 12, 823 N.W.2d at 360. "Ineffective-assistance-of-counsel claims are generally not considered on direct appeal[,]" *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714, because "it is only through habeas corpus that a sufficient record can be made to allow the appropriate review[.]" *Hannemann*, 2012 S.D. 79, ¶ 12, 823 N.W.2d at 360 (quoting *State v. Petersen*, 515 N.W.2d 687, 688 (S.D. 1994). "The development of a habeas record [ ] provides this Court with 'a more complete picture of what occurred.'" *Id.* (quoting *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714) ("allow[ing] attorneys charged with ineffectiveness to explain or defend their actions and strategies"). This Court will "depart from this principle only when trial counsel was so ineffective and counsel's representation so casual as to represent a manifest usurpation of the defendant's constitutional rights." *Id.* (quoting *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714).

[¶40.]      Craig argues that his counsel should have subpoenaed S.C. to testify, and, if ruled unavailable, then counsel should have questioned Brazil about S.C.'s statements. But the circuit court barred the testimony based in part on reasons unrelated to the alleged attorney error, ruling that S.C.'s offered testimony was of very little relevance and that admitting S.C.'s statements would lead to a trial within a trial with any value being substantially outweighed by the confusion that

it would cause. As a result, we cannot say that Craig's trial counsel was "so ineffective and counsel's representation so casual as to represent a manifest usurpation of [Craig's] constitutional rights." *Id.* (quoting *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714). Therefore, Craig's claim on this ground is not ripe for review on direct appeal.

[¶41.] Next, Craig argues that his counsel should have subpoenaed the victim's mother (A.C.). He claims A.C. had a motive to coach the children. But not subpoenaing A.C. could have been a reasonable trial strategy. As such, this argument is not ripe for review on direct appeal.

[¶42.] Lastly, Craig argues that his counsel should have raised C.T.'s identification of his penis as an issue to the jury. When interviewed by Brazil, C.T. referred to Craig's penis as "circular and long and a weird point that would stick out at the tip." Craig maintained that C.T. was describing an uncircumcised penis when he, in fact, was circumcised. But avoiding any reference to an accused abuser's penis may have been a valid trial strategy. As such, this argument is not ripe for review on direct appeal.

## Conclusion

[¶43.] In review, the circuit court found S.C.'s statements to be irrelevant and confusing, thus it did not abuse its discretion by barring their admission. Also, the record supports that Craig knowingly and intelligently waived his right to counsel at sentencing. Further, the circuit court had sufficient information to acquire a thorough acquaintance of Craig's character and history and the subsequent sentence was not grossly disproportionate. Lastly, the record does not establish a

manifest usurpation of Craig's constitutional rights, thus Craig's ineffective assistance of counsel claim is not ripe for direct appeal.  We affirm.

[¶44.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.