#27079-a-JMK

**2015 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

RACHEL LEE COLEMAN,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSEPH NEILES
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ELLIE J. BAILEY
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


JASON R. ADAMS of
Nicholson, Tschetter,
  Adams & Nicholson
Sioux Falls, South Dakota                    Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2015

OPINION FILED **06/17/15**

#27079

KERN, Justice

[¶1.] In the early morning hours of October 17, 2012, Rachel Lee Coleman, age 26, was involved in a high-speed pursuit in Sioux Falls, South Dakota. Law enforcement eventually apprehended Coleman, but not before she crashed into a storefront, was shot by officers, and inflicted life-threatening injuries on a highway patrolman. Coleman pleaded guilty to driving under the influence (DUI) and aggravated assault against a law enforcement officer and admitted to the part II informations filed for both offenses. For the aggravated assault conviction, Coleman received a sentence of 50 years with 10 years suspended and 5 years for the DUI-fourth offense with 2.5 years suspended to be served consecutively for a total term of 42.5 years. On appeal, Coleman contends her sentence is grossly disproportionate to her crime in violation of the Eighth Amendment. We affirm.

*Background*

[¶2.] At approximately 2:30 a.m. on October 17, 2012, in Sioux Falls, a Chevy Malibu drew the attention of Highway Patrolman Andrew Steen. The driver of the Malibu stopped at an intersection during a green light, sat through a red light cycle, and then began moving once the light turned green. Trooper Steen attempted to stop the vehicle, but the driver, later identified as Coleman, refused to heed the officer, and a high speed pursuit ensued throughout the city. Trooper Steen and other law enforcement officers pursued Coleman for about 20 minutes with lights and sirens activated. Eventually, law enforcement chased Coleman to the parking lot of The Bridges strip mall.

[¶3.]        Once in the parking lot, law enforcement tried to encircle Coleman's Malibu to prevent her escape. To that end, law enforcement struck Coleman's Malibu several times from different angles, causing it to spin in different directions. Trooper Steen exited the vehicle, positioned himself directly in Coleman's path, and directed her to get out of her car. Coleman shifted her vehicle from reverse and accelerated directly at Trooper Steen. Considering himself in mortal danger, Trooper Steen fired one round at Coleman, which penetrated the windshield and struck Coleman in the right arm.[1]

[¶4.]        Injured but still refusing to stop, Coleman tried to drive away. Coleman's Malibu collided with Trooper Steen's patrol car, bounced off another patrol car, and eventually smashed into a storefront. Another patrol car, hoping to disable Coleman's vehicle, struck the back of her Malibu, causing it to turn parallel with the storefront. Trooper Steen positioned himself in front of Coleman's Malibu and ordered her out of the car. Coleman shifted into drive and accelerated her vehicle directly towards Trooper Steen at such a rate that she left black marks on the pavement. Coleman struck Trooper Steen, throwing him onto the hood of her Malibu. Trooper Steen travelled on the hood for approximately thirty yards before falling off and striking his head on the pavement. Coleman ran over Trooper Steen's ankle as she drove away. Coleman exited The Bridges' parking lot, and the pursuit resumed. Law enforcement apprehended Coleman several minutes later

---

1.      Law enforcement officers shot Coleman a total of four times during the episode.

when she stopped her vehicle and attempted to flee on foot. Coleman's blood alcohol content was approximately 0.26% at the time of her arrest.

[¶5.] As a result of the incident, Trooper Steen received life-threatening injuries, including multiple skull fractures, a traumatic brain injury, and a broken ankle. Doctors placed Trooper Steen in a medically induced coma and removed a portion of his skull to allow for brain swelling. Trooper Steen spent two months in the hospital recovering from his injuries. The traumatic brain injury caused Trooper Steen to permanently lose his senses of taste, smell, and hearing in one ear. He continues to have additional problems with fine motor control, equilibrium, mobility, and stress fractures in his ankle and may never fully recover.

[¶6.] On November 5, 2012, a Lincoln County Grand Jury returned an eight-count indictment charging Coleman with attempted first-degree murder, three alternative counts of aggravated assault against a law enforcement officer, hit and run accident resulting in death or injury, and aggravated eluding. On February 11, 2013, a superseding indictment was filed, which added two counts of DUI (charged in the alternative). Ultimately, Coleman, pursuant to a plea bargain agreement, pleaded guilty to count 2, aggravated assault of a law enforcement officer, and count 9, DUI. Coleman also admitted to the part II information alleging that she had been convicted of three prior DUI offenses in the last ten years. She also admitted the second part II information alleging that she had been convicted of a prior nonviolent felony. The State agreed to dismiss the remaining charges and recommend a sentence of no more than 42.5 years.

[¶7.]    At the sentencing hearing, the circuit court considered both mitigating and aggravating factors surrounding the offense.  Trooper Steen and several of his family members testified about the impact of Trooper Steen's injuries on the activities of his daily life.  They also made recommendations to the court regarding an appropriate sentence.  The State argued that the severity of Trooper Steen's injuries, Coleman's intoxication, her conduct during the incident, and other aggravating factors weighed heavily in favor of the maximum sentence.  Coleman testified on her own behalf and told the court that she had a history of sexual abuse, an addiction to alcohol, severe depression, and other mental health issues.  She also expressed her remorse and apologized to Trooper Steen and his family.  She emphasized to the court that she was capable of rehabilitation.

[¶8.]    Coleman's counsel argued that a sentence of 42.5 years would be excessive considering Coleman's nonviolent criminal history and degree of intoxication at the time of the offense.  In support of her argument, Coleman provided the circuit court with a Sentence Comparison Synopsis, summarizing sentences received by different offenders statewide for the offense of aggravated assault against a law enforcement officer.  Coleman analyzed the ten most serious sentences received by defendants, focusing on the nature of the offenses and the defendants' prior criminal histories.  Coleman's counsel noted that if the court imposed a maximum 55-year sentence, with 12.5 years suspended as requested by the State, it would be the second longest sentence in the history of South Dakota for this type of crime.  Coleman's counsel argued that the circumstances of this case did

not warrant a sentence of this magnitude when compared to the cases in the Synopsis.

[¶9.]     After listening to the evidence, the circuit court acknowledged that it must examine all of the facts surrounding the case and that every case is unique. The court also indicated that it had read and examined the Presentence Investigation Report, which contained Coleman's background and history. The court stated:

> Primarily, I look at the crime that has been convicted in front of me; I look at the history and background of the defendant; the prospects of rehabilitation; I look at the impact on the victim; and, first and foremost, as I have often said in court in front of a defendant, as a [j]udge, I look at my first job as a judge and that is safety and protection of the community.

The circuit court sentenced Coleman to 50 years for aggravated assault against a law enforcement officer with 10 years suspended and 5 years for DUI-fourth offense with 2.5 years suspended. The court required Coleman to serve the sentences consecutively. Coleman alleges that her sentence constitutes cruel and unusual punishment and violates the Eighth Amendment.

*Standard of Review*

[¶10.]     While we generally review a circuit court's decision regarding sentencing for abuse of discretion, we review claims of Eighth Amendment violations under the gross disproportionality test. *State v. Garreau*, 2015 S.D. 36, ¶ 7, ___ N.W.2d ___, ___.

*Analysis*

[¶11.]     "The Eighth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the infliction of 'cruel

and unusual punishments.'" *State v. Williams*, 2006 S.D. 11, ¶ 12, 710 N.W.2d 427, 431 (quoting U.S. Const. amend. VIII). When we assess a claim of an Eighth Amendment violation,

> [w]e first determine whether the sentence *appears* grossly disproportionate. To accomplish this, we consider the conduct involved[] and any [other] relevant . . . conduct. . . . If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra- and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

*State v. Craig*, 2014 S.D. 43, ¶ 33, 850 N.W.2d 828, 837 (emphasis added) (quoting *State v. Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d 575, 580). "[G]enerally, a sentence within the statutory maximum will not [be] disturbed on appeal." *Bonner*, 1998 S.D. 30, ¶ 10, 577 N.W.2d at 578 (citing *State v. Kaiser*, 526 N.W.2d 722, 726 (S.D. 1995)).

[¶12.] To determine whether a sentence appears grossly disproportionate, we first look at Coleman's conduct. An intoxicated Coleman led law enforcement on a high-speed chase for over 20 minutes in Sioux Falls. Law enforcement officers ordered Coleman to stop or pull over, and she repeatedly failed to obey their commands. Instead, her conduct evinced a determined effort to avoid being apprehended at all costs in that she continued to evade the police even after receiving multiple gunshot wounds. Coleman further caused property damage and put the general public at risk during the incident.

[¶13.] Additionally, Coleman assaulted Trooper Steen on two occasions with her vehicle, causing severe, life-threatening injuries from which he may never fully recover. Her conduct evinced a complete lack of concern for his life or safety. As the circuit court noted when imposing the sentence:

> This is an extremely serious case, number one, because of your behavior and your acts in the case; trying [to] run over somebody, a pedestrian in this case, in [e]ffect, on Trooper Steen . . . out of his car, is extremely serious and the State was justified in initially I think bringing an attempted murder charge in that kind of situation. There certainly is an argument to be made and could have been made to a jury that that is exactly what you intended when you did what you did in this case. Clearly, Trooper Steen when he saw you accelerating towards him and then fired his gun, believed that he was in grave mortal danger. And I cannot imagine too many more serious aggravated assault against law enforcement fact situations than that.

[¶14.] As a result of Coleman's conduct, Trooper Steen suffered serious injuries, including a traumatic brain injury, loss of taste, smell, hearing in one ear, mobility, fine motor control, and a broken ankle. Trooper Steen and his family testified that he continues to struggle daily, and his life plans must be altered to accommodate his condition.

[¶15.] Second, we look at other relevant conduct. Coleman's DUI conviction arising out of this incident was her fourth DUI offense in four years. She acknowledged that she had a drinking problem, but failed to get help to address her addiction. Her decision to continue to drink and drive posed a significant risk to the community as a whole.

[¶16.] Coleman asserts that the circuit court did not adequately consider her character and history. "[T]he sentencing court should acquire a thorough

acquaintance with the character and history of the [person] before it. This study should examine a defendant's general moral character, mentality, habits[,] social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580 (quoting *State v. Chase in Winter*, 534 N.W.2d 350, 354-55 (S.D. 1995)) (internal quotation marks omitted). Coleman contends that there was "little evidence" to suggest that the court actually considered her history and character. However, a review of the record indicates that the circuit court read and considered Coleman's Presentence Investigation Report,[2] the mitigating evidence presented by Coleman and her counsel at the hearing, the testimony of Coleman and her mother, and Coleman's likelihood for rehabilitation. We afford circuit courts a "wide latitude regarding the type and source of the information utilized[]" to determine a defendant's sentence. *State v. Berget*, 2013 S.D. 1, ¶ 74, 826 N.W.2d 1, 24. Therefore, the record does not support Coleman's contention that the circuit court failed to adequately consider her character, history, and other relevant personal information.

[¶17.]        We also consider "the gravity of the offense and the harshness of the penalty[.]" *Solem v. Helm*, 463 U.S. 277, 290-91, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983), *quoted in State v. Guthmiller*, 2003 S.D. 83, ¶ 43, 667 N.W.2d 295, 309.

---

2. The Presentence Investigation Report contains relevant biographical and historical information about Coleman. In its oral pronouncement of Coleman's sentence, the circuit court specifically stated that it "looked at the history and background of the defendant." Additionally, the court indicated it considered Coleman's mental health issues, post-traumatic stress disorder, alcohol problem, and chances for rehabilitation.

Coleman received 55 years for her crimes, which the court reduced to 42.5 years by suspending the execution of 12.5 years upon certain conditions. While Coleman received a lengthy sentence, we do not think it appears grossly disproportionate under the Eighth Amendment considering the gravity of the offense. Coleman was convicted of aggravated assault against a law enforcement officer, which is a class 2 felony carrying a maximum sentence of 25 years in the penitentiary. SDCL 22-18-1.05; SDCL 22-18-1.1; SDCL 22-6-1. With the part II enhancement as a habitual offender, the offense would be punishable as a class 1 felony, subjecting her to up to 50 years for just this one offense. SDCL 22-7-7; SDCL 22-6-1. Compared to other forms of assault, aggravated assault against a law enforcement officer carries the highest potential punishment. *See, e.g.*, SDCL 22-18-1 (simple assault, class 1 misdemeanor); SDCL 22-18-1.05 (simple assault against a law enforcement officer, class 6 felony); SDCL 22-18-1.1 (aggravated assault, class 3 felony). The Legislature also classified attempted first-degree murder as a class 2 felony. SDCL 22-4-1; SDCL 22-24-4(1).

[¶18.] While aggravated assault against a law enforcement officer carries a potentially lengthy sentence, it is by no means the most severe punishment, or most egregious offense, under South Dakota law. The offense of first-degree murder carries the highest penalty, punishable by death or life without parole. SDCL 22-16-12; SDCL 22-6-1. Trooper Steen nearly died as a result of Coleman's actions. If he had done so, Coleman would have faced a potential murder charge. "Thus, [Coleman's] sentence is far from 'the most severe punishment that the State could

have imposed on any criminal for any crime.'" *See Garreau*, 2015 S.D. 36, ¶ 10, ___ N.W.2d at ___ (quoting *Solem*, 463 U.S. at 297, 103 S. Ct. at 3013).

[¶19.]     Coleman nonetheless argues that her sentence is harsh in that she is 26 years old and will be required to serve many years before she is first eligible for parole. Certainly Coleman's sentence is severe, but so were her actions and so are Trooper Steen's lifelong injuries. Coleman's decision to ignore her alcohol addiction despite three prior DUI convictions placed the public at risk and forever altered the course of Trooper Steen's life and her own. A severe sentence in and of "[i]tself is not equivalent to cruel and unusual[]" punishment. *Bonner*, 1998 S.D. 30, ¶ 27, 577 N.W.2d at 582. Indeed, it is "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 2707, 115 L. Ed. 2d 836 (1991)). Considering the nature of Coleman's conduct, the severity of the injuries to Trooper Steen, Coleman's previous DUI offenses, and the sentence being within the statutory limits, we conclude "these circumstances fail to suggest gross disproportionality." *State v. Bruce*, 2011 S.D. 14, ¶ 29, 796 N.W.2d 397, 406 (quoting *Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580). This is not one of the "exceedingly rare cases" where Coleman's sentence was grossly disproportionate "to the particulars of the offense and the offender." *Id.* ¶ 39 (citing *Bonner*, 1998 S.D. 30, ¶ 25, 577 N.W.2d at 582) (internal quotation marks omitted). As Coleman's sentence is not grossly disproportionate, we decline to conduct an intra-/inter-jurisdictional analysis. We affirm.

#27079

[¶20.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.